**UNITED STATES of America,**

v.

**Louis CANTOR, Defendant.**

**No. S2 94 Cr. 465.**

United States District Court,
S.D. New York.

Aug. 21, 1995.

**112**

United States Attorney, Southern District of New York, New York City (Andrew S. Dember, of counsel), for the U.S.

Newman & Schwartz, New York City (Gustave H. Newman, Richard A. Greenberg, John R. Cuti, of counsel), for defendant.

## OPINION AND ORDER

STANTON, District Judge.

The second superseding indictment charges defendant Louis Cantor with violations of 18 U.S.C. § 666 and with conspiracy to violate that statute in violation of 18 U.S.C. § 371.

Cantor seeks an order (1) dismissing the indictment because 18 U.S.C. § 666 is unconstitutional under the Tenth Amendment, the Due Process Clause, and the *Ex Post Facto* Clause; (2) suppressing Cantor's statements to a government informant; (3) severing his trial on Counts Five and Six from that on Counts One through Four; (4) dismissing Count Four for lack of proper venue; and (5) directing the government to provide certain particulars.

Although he also moved to dismiss portions of the first superseding indictment for failure to allege an essential element of certain offenses charged, and certain counts claimed to be multiplicitous, the second superseding indictment renders those motions moot. (Cantor Reply Mem. at 1.)

## BACKGROUND

18 U.S.C. § 666 states, in pertinent part, that:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

.     .     .     .     .

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribunal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. . . .

The six-count indictment states that Cantor, an attorney whose practice included the representation of construction industry clients who conduct business with the New York City Board of Education ("BOE"), (Indictment ¶ 3), violated that statute and 18 U.S.C. § 371 when he facilitated his clients' bribery of a BOE official.

## DISCUSSION

1. Tenth Amendment challenge to 18 U.S.C. § 666

██ Cantor claims that 18 U.S.C. § 666 is unconstitutional because Congress "did not make clear to the states the conditions for accepting federal funds", namely, "the federalization of almost all local conduct and officials". (Cantor Reply Mem. at 11). He also contends that because courts have concluded that § 666 "neither explicitly nor implicitly requires that the $10,000 be directly linked to the program that was the subject of the bribe," *United States v. Coyne*, 4 F.3d 100, 109–10 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 929, 127 L.Ed.2d 221 (1994), the statute imposes a condition on states' receipt of federal funds which is unrelated to

the federal interest protected by the statute. That condition is the imposition of federal criminal jurisdiction over what would otherwise be purely local bribery schemes.

The parties agree that Congress enacted 18 U.S.C. § 666 pursuant to its spending power. Cantor Mem. at 33; Cantor Reply Mem. at 11; Second Gov't Mem. at 20; *see* U.S. Const. art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States ..."). The Supreme Court has stated that

> Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power "to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."

*South Dakota v. Dole*, 483 U.S. 203, 206, 107 S.Ct. 2793, 2795–96, 97 L.Ed.2d 171 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980) (opinion of Burger, C.J.)). However, the spending power is "subject to several general restrictions": (1) the power must be used in pursuit of the general welfare, (2) "if Congress desires to condition the States' receipt of federal funds, it 'must do so unambiguously ..., enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation' ", (3) "conditions on federal grants might be illegitimate if they are unrelated 'to the federal interest in particular national projects or programs' ", and (4) restrictions imposed by other constitutional provisions. *Dole*, 483 U.S. at 207–08, 107 S.Ct. at 2796 (alteration in original) (citations omitted).

18 U.S.C. § 666 does not impose a condition on the receipt of federal funds. The statute neither requires a state's compliance with federal regulatory or administrative directives, nor prevents state action. As stated by Judge Sotomayor in *United States v. Fulton*, S2 94 Cr. 285 (SS), 5/24/95 Tr. at 34–38 (S.D.N.Y.) (oral decision):

> Section 666 does not derogate any state right. Unlike the issues addressed in

*South Carolina [Dakota] v. Dole*, 483 U.S. 203 [107 S.Ct. 2793, 97 L.Ed.2d 171] [ (1987) ] or in *New York v. United States*, [505 U.S. 144] 112 S.Ct. 2408 [120 L.Ed.2d 120 (1992) ], where the federal government was, in essence, coercing a state entity to do something that it might or might not choose to do in order to receive federal funds, Section 666 does not force the state government to do anything. Neither does it take away from the state government any powers to protect its own interest. The state can still pass any laws it wishes to control or penalize the conduct of its own officials. All Congress has done in Section 666 is to pass a law making the conduct of individuals, not the state, criminal. Hence, I do not believe that a Tenth Amendment argument is appropriate in this case, and I reject it.

■ Nor is the conduct prohibited by § 666 so remote from the federal interest in protecting federal funds from the effects of local bribery schemes as to exceed the scope of Congressional spending power or to run afoul of the Tenth Amendment. *But cf. United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

Cantor's motion to dismiss the indictment on Tenth Amendment grounds is denied.

## 2. *Ex post facto*/due process challenge

■ Cantor contends that 18 U.S.C. § 666 violates the Constitution's *Ex Post Facto* and Due Process Clauses because the statute's federal funding requirement can be satisfied if the entity receives at least $10,000 within the twelve-month period after the conduct. *See* 18 U.S.C. § 666(d)(5) ("the term 'in any one-year period' means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense"). He argues that the statute permits the government to manufacture federal criminal jurisdiction over participants in local bribery schemes after their conduct has occurred, simply by later transferring federal funds to the local entity connected with the bribe.

With limited exceptions not relevant here, *see Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973); *Ada v. Guam Soc'y of Obstetricians and Gynecologists,* —— U.S. ——, ——, 113 S.Ct. 633, 634, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting), "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973).

The second superseding indictment states that the New York City Board of Education ("BOE") received over $10,000 from the federal government in the twelve-month period before Cantor's offenses. (Indictment ¶¶ 6, 9, 15, 18, 24, 27.) Accordingly, no due process or *ex post facto* claim is presented by the facts of this case. Cantor's motion to dismiss the indictment on those grounds is denied.

### 3. Motion to suppress

■ Cantor moves to suppress his statements to Sheldon Rosenblum, a former attorney employed by the BOE. Cantor claims that suppression is warranted because government attorneys violated Disciplinary Rule 1–103(A) of the Code of Professional Responsibility, which states (as adopted by the courts of New York):

> A lawyer possessing knowledge, (1) not protected as a confidence or secret, or (2), not gained in the lawyer's capacity as a member of a bona fide lawyer assistance or similar program or committee, of a violation of section 1200.3 of this Part [DR 1–102] that raises a substantial question as to another lawyer's honesty, trustworthiness or fitness in other respects as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.

N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.4 (alteration added); *cf.* N.Y.Judiciary Law app. DR 1–103 (McKinney 1992 & Supp. 1995). DR 1–102 prohibits, *inter alia,* "con-

duct involving dishonesty, fraud, deceit, or misrepresentation." N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.3(a)(4); N.Y.Judiciary Law app. DR 1–102(A)(4) (McKinney 1992 & Supp.1995).

■ "The federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar." *United States v. Hammad,* 858 F.2d 834, 837 (2d Cir.1988), *reconsideration declined,* 902 F.2d 1062, 1063–64 (2d Cir.), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). Although their authority includes the suppression of evidence obtained by federal prosecutors in violation of a disciplinary rule, *Hammad,* 858 F.2d at 840–42, district courts should "exercise their discretion cautiously and with clear cognizance that suppression imposes a barrier between the finder of fact and the discovery of truth." *Id.* at 842.

■ "[I]n determining the scope of a particular disciplinary rule, we recognize that the rules of ethics are not statutes, but standards of conduct. Accordingly, although 'plain meaning' or 'intent of the drafters' interpretive standards are appropriate when the disciplinary rule in question is unambiguous, where . . . neither the plain meaning nor the intent of the drafters can be discerned from the face of the rule, matters of policy are appropriately considered in determining its scope." *Grievance Committee v. Simels,* 48 F.3d 640, 645 (2d Cir.1995). Neither the text of DR 1–103 nor the corresponding Ethical Considerations specifies a time period within which reporting is required. *See* N.Y.Comp.Codes R. & Regs. tit. 22, § 1200.4; N.Y. Judiciary Law app. EC 1–2 & EC 1–4 (McKinney 1992 & Supp.1995). In order to further the purposes of the Rule, namely, to protect the public and the profession from the actions of unscrupulous attorneys, *see, e.g.,* N.Y.Judiciary Law app. EC 1–1, EC 1–2, EC 1–4, EC 1–5 (McKinney 1992 & Supp. 1995), *Hammad,* 858 F.2d at 839 ("The Code is designed to safeguard the integrity of the profession and preserve public confidence in our system of justice"), DR 1–103 must be read to require reporting to an appropriate authority within a reasonable time under the circumstances.

Under the circumstances of this case, the government's use of Rosenblum does not require suppression of Cantor's statements. Although there is an important state interest in the regulation of attorneys practicing within its borders, there is a competing federal interest in the enforcement of federal criminal law. "If a particular interpretation of a state ethics rule is inconsistent with or antithetical to federal interests, a federal court interpreting that rule must do so in a way that balances the varying *federal* interests at stake." *Simels*, 48 F.3d at 646 (emphasis in original). The state interest furthered by immediate disclosure of Rosenblum's unethical conduct is antithetical to federal interests to whatever extent it might jeopardize the federal criminal investigation. Balancing those competing interests, under the circumstances in this case, Cantor's statements will not be suppressed.

Accordingly, Cantor's motion to suppress is denied.

### 4. Severance of Counts Five and Six

■ Fed.R.Crim.P. 8(a) states that "Two or more offenses may be charged in the same indictment or information ... if the offenses charged ... are of the same or similar character or are based ... on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The three bribery schemes alleged in the indictment are similar, as are Cantor's alleged roles in them. As counsel for his co-conspirators, each of whom sought to influence the BOE in relation to some transaction they had with it, Cantor introduced each co-conspirator to Rosenblum, to whom each co-conspirator paid bribes. Moreover, the three contemporaneous schemes charged in the indictment were part of a common plan by Cantor to further his clients' business objectives in their dealings with the BOE through the facilitation of bribes to a particular BOE official: Rosenblum. Accordingly, Counts Five and Six are appropriately joined under Fed.R.Crim.P. 8(a).

■ Although joinder of multiple offenses in a single trial often risks some prejudice to the defendant, Rule 8(a) "reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused." *United States v. Turoff*, 853 F.2d 1037, 1042, 1043 (2d Cir.1988); *United States v. Amato*, 15 F.3d 230, 237 (2d Cir.1994); *United States v. Werner*, 620 F.2d 922, 929 (2d Cir.1980); *United States v. Alverado*, 92 Cr. 728 (LMM), 1994 WL 669968, at *2–3 (S.D.N.Y. Nov. 30, 1994). Thus, "a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" *Amato*, 15 F.3d at 237 (citation omitted).

Cantor has not carried that burden. He claims that because Counts Five and Six relate to a "classic" bribery scheme, while the conduct alleged in Counts One through Four is "not obviously corrupt", (Cantor Mem. at 50), and because there is a "substantial overlap in time and participants" among the various bribery schemes, (Cantor Mem. at 53), there is a substantial risk that the jury will confuse the various counts and convict him based on an impermissible cumulation of evidence. (Cantor Mem. at 54.)

But in fact the schemes charged in the indictment are not so complex, nor are there so many participants, that an appropriately charged jury will have difficulty considering each count on its merits. The motion for severance under Fed.R.Crim.P. 14 is denied. *See United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990) ("A motion under the rule [Fed.R.Crim.P. 14] is committed to the sound discretion of the trial court and is 'virtually unreviewable.' It is thus not sufficient to show a likelihood that a separate trial would have benefitted the defendant. Rather, there must have been prejudice so substantial as to amount to a 'miscarriage of justice'") (alteration added, citations omitted); *Alverado*, 1994 WL 669968, at *3 (substantial prejudice standard "not met by simply showing that the defendant would have had a better chance of acquittal at a separate trial").

### 5. Venue

■ Cantor seeks dismissal of Count Four, claiming that venue is improper in the Southern District of New York. He argues

that because the bribe alleged in that count was offered and given by a third party (Cantor's client) in Brooklyn and Queens, (*see* Gov't Mem.Ex. 2 at ¶¶ 16–20, 23, 26), venue for the substantive offense is not proper here.

■■ Count Four charges Cantor with a violation of 18 U.S.C. §§ 2 and 666. One charged as an accessory may be tried where he committed accessorial acts. *See United States v. Bozza*, 365 F.2d 206, 221 (2d Cir. 1966) ("This court held in *Gillette* that 18 U.S.C. § 2 . . . 'does not supersede the common law rule of venue but provides an additional venue' "; "Congress seems to have been content with venue where the defendant's own accessorial acts were committed or where the crime occurred . . ."); *United States v. Gillette*, 189 F.2d 449, 451–52 (2d Cir.) ("Since Gillette neither transported the checks nor was present at their transportation, by the common law rule as we inherited it he would be triable only as an accessory, and only in the district where the accessorial acts took place. The statute cited in note 1 [18 U.S.C. § 2] makes an accessory a principal so that it is now possible to try him where the substantive offense was committed. But this, in our opinion, does not supersede the common law rule of venue but provides an additional venue") (alteration added) (footnotes omitted), *cert. denied*, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951); *United States v. McCulley*, 673 F.2d 346, 350–51 (11th Cir.), *cert. denied*, 459 U.S. 852, 103 S.Ct. 116, 74 L.Ed.2d 102 (1982); *United States v. Sweig*, 316 F.Supp. 1148, 1161 (S.D.N.Y.1970); *United States v. Branham*, Crim. No. 86–63–JRR, 1987 WL 12252, at *8 (D.Del. June 5, 1987); *see also United States v. Delia*, 944 F.2d 1010, 1014 (2d Cir.1991). *But see United States v. Walden*, 464 F.2d 1015 (4th Cir.1972).

The government's offer of proof on the issue of venue, supported by a sworn complaint, includes the allegation that on March 24, 1992, Cantor met with Rosenblum in Cantor's Manhattan offices. At that meeting, Cantor and Rosenblum discussed the method by which the balance of the bribe would be paid to Rosenblum by John Brunetti, a principal of one of Cantor's clients. (*See* Gov't Mem.Ex. 2 at ¶¶ 21–22; Second Gov't Mem. at 4.) Because that accessorial act, if proven at trial, establishes venue in this district, Cantor's motion to dismiss Count Four on those grounds is denied. *See United States v. Rogers*, No. 90 Cr. 377 (CSH), 1991 WL 90797, at *3 (S.D.N.Y. May 21, 1991) ("In considering a motion to dismiss an indictment the district court must take as true all of the allegations contained in the indictment. The district court can consider additional documents that have been submitted but cannot give any weight to contrary factual assertions made by the defendant"); *United States v. Castellano*, 610 F.Supp. 1359, 1388–89 (S.D.N.Y.1985) ("At this stage of the proceedings, however, the government need only allege, with sufficient specificity, that venue is appropriate by reason of the commission of the charged acts in the Southern District. Where the indictment is insufficient on its face, moreover, the government may meet this burden either by amending the indictment to reflect the commission of the charged acts in the Southern District, or through a sworn bill of particulars") (citation omitted).

### 6. Request for further particulars

■■ Cantor seeks further particulars concerning federal funding received by the BOE in the twelve-month period before Cantor's alleged offenses.

" 'A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.' " *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (quoting *United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.1989)), *cert. denied sub nom. Cruz v. United States*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

The government is directed to identify the federal programs under which the BOE is claimed to have received benefits in excess of $10,000, the amount of the benefits received by the BOE, and the dates on which those benefits were received by the BOE. That will sufficiently inform Cantor of the charges against him to enable him to prepare a de-

fense, to avoid surprise at trial, and to enable him to interpose a plea of double jeopardy if necessary. *See Torres,* 901 F.2d at 234; *United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988); *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). Accordingly, his requests for other particulars are denied except as noted above.

### CONCLUSION

Cantor's request for additional particulars concerning the federal funds received by the BOE is granted to the extent stated above. The motions are otherwise denied.

So ordered.