891 So.2d 1239 (2005)
In re Michael G. RIEHLMANN.
No. 2004-B-0680.
Supreme Court of Louisiana.
January 19, 2005.
*1241 Charles Bennett Plattsmier, Chief Disciplinary Counsel, for Applicant.
Brett J. Prendergast, Michael G. Riehlmann, New Orleans, for Respondent.
Robert Stephen Glass, New Orleans, Michael L. Banks, for John Thompson, Amicus Curiae.

ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Michael G. Riehlmann, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
Respondent is a criminal defense attorney who was formerly employed as an Assistant District Attorney in the Orleans Parish District Attorney's Office. One evening in April 1994, respondent met his close friend and law school classmate, Gerry Deegan, at a bar near the Orleans Parish Criminal District Court. Like respondent, Mr. Deegan had been a prosecutor in the Orleans Parish District Attorney's Office before he "switched sides" in 1987. During their conversation in the bar, Mr. Deegan told respondent that he had that day learned he was dying of colon cancer. In the same conversation, Mr. Deegan confided to respondent that he had suppressed exculpatory blood evidence in a criminal case he prosecuted while at the District Attorney's Office. Respondent recalls that he was "surprised" and "shocked" by his friend's revelation, and that he urged Mr. Deegan to "remedy" the situation. It is undisputed that respondent did not report Mr. Deegan's disclosure to anyone at the time it was made. Mr. Deegan died in July 1994, having done nothing to "remedy" the situation of which he had spoken in the bar.
Nearly five years after Mr. Deegan's death, one of the defendants whom he had prosecuted in a 1985 armed robbery case was set to be executed by lethal injection on May 20, 1999. In April 1999, the lawyers for the defendant, John Thompson, discovered a crime lab report which contained the results of tests performed on a piece of pants leg and a tennis shoe that were stained with the perpetrator's blood during a scuffle with the victim of the *1242 robbery attempt. The crime lab report concluded that the robber had Type "B" blood. Because Mr. Thompson has Type "O" blood, the crime lab report proved he could not have committed the robbery; nevertheless, neither the crime lab report nor the blood-stained physical evidence had been disclosed to Mr. Thompson's defense counsel prior to or during trial. Respondent claims that when he heard about the inquiry of Mr. Thompson's lawyers, he immediately realized that this was the case to which Mr. Deegan had referred in their April 1994 conversation in the bar. On April 27, 1999, respondent executed an affidavit for Mr. Thompson in which he attested that during the 1994 conversation, "the late Gerry Deegan said to me that he had intentionally suppressed blood evidence in the armed robbery trial of John Thompson that in some way exculpated the defendant."
In May 1999, respondent reported Mr. Deegan's misconduct to the ODC. In June 1999, respondent testified in a hearing on a motion for new trial in Mr. Thompson's armed robbery case. During the hearing, respondent testified that Mr. Deegan had told him that he "suppressed exculpatory evidence that was blood evidence, that seemed to have excluded Mr. Thompson as the perpetrator of an armed robbery." Respondent also admitted that he "should have reported" Mr. Deegan's misconduct, and that while he ultimately did so, "I should have reported it sooner, I guess."
On September 30, 1999, respondent gave a sworn statement to the ODC in which he was asked why he did not report Mr. Deegan's disclosure to anyone at the time it was made. Respondent replied:
I think that under ordinary circumstances, I would have. I really honestly think I'm a very good person. And I think I do the right thing whenever I'm given the opportunity to choose. This was unquestionably the most difficult time of my life. Gerry, who was like a brother to me, was dying. And that was, to say distracting would be quite an understatement. I'd also left my wife just a few months before, with three kids, and was under the care of a psychiatrist, taking antidepressants. My youngest son was then about two and had just recently undergone open-heart surgery. I had a lot on my plate at the time. A great deal of it of my own making; there's no question about it. But, nonetheless, I was very, very distracted, and I simply did not give it the important consideration that it deserved. But it was a very trying time for me. And that's the only explanation I have, because, otherwise, I would have reported it immediately had I been in a better frame of mind. [emphasis added]

DISCIPLINARY PROCEEDINGS

Formal Charges
On January 4, 2001, the ODC filed one count of formal charges against respondent, alleging that his failure to report his unprivileged knowledge of Mr. Deegan's prosecutorial misconduct violated Rules 8.3(a) (reporting professional misconduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. The ODC subsequently amended the formal charges to delete the alleged violation of Rule 8.4(c).
On March 5, 2002, respondent answered the amended formal charges and admitted some of the factual allegations therein, but denied that his conduct violated the Rules of Professional Conduct. Specifically, respondent asserted that Rule 8.3(a) "merely requires that an attorney possessing unprivileged knowledge of a violation of this Code shall report such knowledge to the authority empowered *1243 to investigate such acts. It is undisputed that respondent did report his knowledge of Deegan's statements to Thompson's attorneys, with the clear understanding that this information would be reported to the District Attorney and the Court, undeniably authorities empowered to investigate Deegan's conduct."

Formal Hearing
When this matter proceeded to a formal hearing before the committee, respondent testified that his best recollection of his conversation with Mr. Deegan in 1994 "is that he told me that he did not turn over evidence to his opponents that might have exculpated the defendant." Nevertheless, when asked whether he recognized during the barroom conversation that Mr. Deegan had violated his ethical duties, respondent replied, "Well, certainly." Respondent admitted that he gave the conversation no further thought after he left the bar because he was "distracted" by his own personal problems.

Hearing Committee Recommendation
In its report filed with the disciplinary board, the hearing committee concluded that respondent did not violate Rule 8.3(a), but that he should be publicly reprimanded for his violation of Rule 8.4(d).
Considering the evidence presented at the hearing, the committee made a factual finding that during the 1994 barroom conversation, Mr. Deegan explained to respondent that he did not turn over evidence in a case that might have exculpated a defendant, but "equivocated on whether the evidence proved the innocence of a defendant." Moreover, the committee found there is no clear and convincing evidence that Mr. Deegan identified John Thompson by name in the disclosure to respondent in 1994. The committee believed respondent's testimony that he did not draw a connection between Mr. Deegan's 1994 statements and the Thompson case until 1999, when he heard about the inquiry of Mr. Thompson's lawyers.
Based on its factual findings, the committee found that respondent did not violate Rule 8.3(a) because he did not have "knowledge of a violation" that obligated him to report Mr. Deegan to the ODC or to any other authority. The committee pointed out that it believed respondent's testimony that Mr. Deegan made equivocal statements in 1994 that did not rise to the level of a "confession" that Deegan had actually suppressed the crime lab report nine years earlier. The committee found Mr. Deegan qualified his statement that the evidence "might" have exculpated the defendant, and furthermore, agreed that if the evidence did not tend to negate the defendant's guilt, Mr. Deegan would have had no obligation to turn over that evidence under Brady.[1] Consequently, the committee determined that respondent would have had no violation to report. The committee found Mr. Deegan's statements at most suggested a potential violation of the ethical rules, but the committee declined to construe Rule 8.3(a) to require a lawyer to report a potential violation of an ethical rule by another lawyer.
Although the committee did not find that respondent violated Rule 8.3(a), the committee found he violated Rule 8.4(d), which imposes a "broader obligation to ensure that justice is fairly administered," by his "complete inaction after the barroom disclosure." The committee found respondent's conversation with Mr. Deegan "was of sufficient importance that not pursuing Deegan for a disclosure or to rectify the situation, failing to investigate further, and ultimately not taking any affirmative action for five years constituted conduct that hindered the administration of justice." The committee determined *1244 the baseline sanction for such conduct by respondent is a reprimand.
As aggravating factors, the committee recognized respondent's experience in the practice of law (admitted 1983) and the vulnerability of the victim, Mr. Thompson. In mitigation, the committee acknowledged the absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems (including the terminal colon cancer of his best friend, Mr. Deegan; marital problems; and the health problems both he and his son were experiencing), timely good faith effort to rectify the consequences of Mr. Deegan's misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceeding, character and reputation, and remorse.
In light of the mitigating factors present, and finding that a suspension would serve no useful purpose in this case, the committee recommended the imposition of a public reprimand.
Both respondent and the ODC filed objections to the hearing committee's recommendation.

Disciplinary Board Recommendation
The disciplinary board adopted the hearing committee's factual findings but rejected its application of Rule 8.3(a) of the Rules of Professional Conduct. The board determined that a finding of a violation of Rule 8.3(a) requires clear and convincing evidence that an attorney (1) possessed unprivileged knowledge of an ethical violation and (2) failed to report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation. Concerning the knowledge requirement, the board considered various legal authorities interpreting both Louisiana Rule 8.3(a) and Model Rule 8.3(a), and determined that a lawyer's duty to report professional misconduct is triggered when, under the circumstances, a reasonable lawyer would have "a firm opinion that the conduct in question more likely than not occurred." See Attorney U v. Mississippi Bar, 678 So.2d 963 (Miss.1996); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 5 cmt. I (2000). The board explained that the requisite knowledge under Rule 8.3(a) is "more than a mere suspicion, but less than absolute or moral certainty."
Employing this analysis, the board concluded the committee erred in its finding that respondent had no duty to report because Mr. Deegan's statements were equivocal. The board found respondent must have understood from his 1994 conversation with Mr. Deegan that Mr. Deegan had suppressed Brady evidence:
If Respondent did not understand from his conversation with Deegan that Deegan has suppressed evidence that he was obligated to produce, why was Respondent shocked and surprised? Why did Respondent tell Deegan that what he had done was "not right" and that Deegan had to "rectify" the situation? Respondent never changed his testimony in this respect. Obviously, if Respondent understood from his conversation with Deegan that Deegan had done nothing wrong, there would have been no occasion for Respondent to say that it was "not right" or that Deegan had to "rectify" what he had done. The Committee makes no attempt to explain these circumstances which are wholly inconsistent with the Committee's theory. This uncontradicted circumstantial evidence cannot be ignored. Indeed, if Deegan believed he had done nothing wrong, why did Deegan even bother to bring the matter up nearly ten (10) years after Thompson was convicted? More importantly, why did he bring it up in the same conversation that he disclosed to Respondent that he (Deegan) had terminal colon cancer?
*1245 The board concluded that a reasonable lawyer under the circumstances would have formed a firm opinion that Mr. Deegan had wrongfully failed to disclose the blood evidence, and that respondent did in fact form such an opinion because he advised Mr. Deegan that what he (Deegan) did was "not right" and that he (Deegan) had to "rectify" the situation. Accordingly, the board found respondent had sufficient knowledge of misconduct by Mr. Deegan to trigger a duty to report the misconduct to the disciplinary authorities.
The board then turned to a discussion of whether respondent's failure to report Mr. Deegan's misconduct for more than five years after learning of it constituted a failure to report under Rule 8.3(a). The board acknowledged that Rule 8.3(a) does not provide any specific time limit or period within which the misconduct must be reported. Nevertheless, the board reasoned that Rule 8.3(a) serves no useful purpose unless it is read to require reporting to an appropriate authority within a reasonable time under the circumstances. See United States v. Cantor, 897 F.Supp. 110 (S.D.N.Y.1995); Douglas R. Richmond, The Duty to Report Professional Misconduct: A Practical Analysis of Lawyer Self-Regulation, 12 GEO. J. LEGAL ETHICS 175, 200 (1999). Therefore, absent special circumstances, the board determined that a lawyer must report his knowledge of misconduct "promptly." Applying these principles to the instant case, the board determined respondent's disclosure in 1999 of misconduct he discovered in 1994 was not timely and did not satisfy the requirements of Rule 8.3(a).
The board also found that respondent's conduct violated Rule 8.4(d) because his inactivity following Mr. Deegan's disclosure was prejudicial to the administration of justice.
The board found respondent knowingly violated a duty owed to the profession, and that his actions resulted in both actual and potential injury to Mr. Thompson. The board noted that if respondent had taken further action in 1994, when Mr. Deegan made his confession, Mr. Thompson's innocence in connection with the armed robbery charge may have been established sooner. The board also observed that negative publicity attached to respondent's actions, thereby causing harm to the legal profession. The board determined the baseline sanction for respondent's conduct is a suspension from the practice of law.[2]
The board adopted the aggravating and mitigating factors cited by the hearing committee, except that the board refused to credit respondent with the mitigating factor of making a timely good faith effort to rectify the consequences of Mr. Deegan's misconduct.
Considering the prior jurisprudence,[3] the board determined that some period of *1246 suspension is appropriate for respondent's conduct. In light of the significant mitigating factors in this matter, the board recommended that respondent be suspended from the practice of law for six months. One board member dissented and would recommend a suspension of at least one year and one day.
Both respondent and the ODC filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
In this matter we are presented for the first time with an opportunity to delineate the scope of an attorney's duty under Rule 8.3 to report the professional misconduct of a fellow member of the bar. Therefore, we begin our discussion with a few observations relating to the rule and its history.
The American legal profession has long recognized the necessity of reporting lawyers' ethical misconduct. When the American Bar Association adopted its first code of ethics in 1908, Canon 29 of the Canons of Professional Ethics, entitled "Upholding the Honor of the Profession," encouraged lawyers to "expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession, ..." Charles W. Wolfram, Modern Legal Ethics 683 n. 16 (1986). More than sixty years later, the ABA enacted Disciplinary Rule 1-103(A) of the Model Code of Professional Responsibility, the predecessor of the current Rule 8.3(a) of the Model Rules of Professional Conduct. Both the 1969 Code, in DR 1-103(A), and the 1983 Model Rules, in Rule 8.3(a), make it clear that the duty to report is not merely an aspiration but is mandatory, the violation of which subjects the lawyer to discipline.[4]See Ronald D. Rotunda, The Lawyer's Duty to Report Another Lawyer's Unethical Violations in the Wake of Himmel, 1988 U. ILL. L.REV. 977, 980-81 (1988).
This court first adopted Rule 8.3 on December 18, 1986, effective January 1, 1987. Louisiana's rule is based on ABA Model Rule 8.3; however, there are several differences between the Model Rule and the Louisiana Rule that was in effect in 2001, at the time the formal charges were filed in this case.[5] Most significantly, Model Rule 8.3 requires a lawyer to report the misconduct of another lawyer only when the conduct in question "raises a substantial question" as to that lawyer's fitness to practice. Louisiana's version of Rule 8.3 imposed a substantially more expansive reporting requirement, in that our rule required a lawyer to report all unprivileged knowledge of any ethical violation by a lawyer, whether the violation was, in the reporting lawyer's view, flagrant and substantial or minor and technical. A task force of the Louisiana State Bar Association concluded that it was inappropriate to put a lawyer "in the position of making a subjective judgment" regarding the significance of a violation, and felt it was preferable instead "to put the burden on every lawyer to report all violations, regardless of their nature or kind, whether or not they raised a substantial question as to honesty, trustworthiness, or fitness." See *1247 Report and Recommendation of the Task Force to Evaluate the American Bar Association's Model Rules of Professional Conduct, at p. 24 (November 23, 1985).
We now turn to a more in-depth examination of the reporting requirement in Louisiana. At the time the formal charges were filed in this case, Louisiana Rule 8.3(a) provided:
A lawyer possessing unprivileged knowledge of a violation of this code shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation.
Thus, the rule has three distinct requirements: (1) the lawyer must possess unprivileged knowledge of a violation of the Rules of Professional Conduct; (2) the lawyer must report that knowledge; and (3) the report must be made to a tribunal or other authority empowered to investigate or act on the violation. We will discuss each requirement in turn.

Knowledge
In its recommendation in this case, the disciplinary board did excellent work in collecting and analyzing the cases and legal commentary interpreting the knowledge requirement of Rule 8.3(a). We need not repeat that analysis here. Considering those authorities, it is clear that absolute certainty of ethical misconduct is not required before the reporting requirement is triggered. The lawyer is not required to conduct an investigation and make a definitive decision that a violation has occurred before reporting; that responsibility belongs to the disciplinary system and this court. On the other hand, knowledge requires more than a mere suspicion of ethical misconduct. We hold that a lawyer will be found to have knowledge of reportable misconduct, and thus reporting is required, where the supporting evidence is such that a reasonable lawyer under the circumstances would form a firm belief that the conduct in question had more likely than not occurred. As such, knowledge is measured by an objective standard that is not tied to the subjective beliefs of the lawyer in question.

When to Report
Once the lawyer decides that a reportable offense has likely occurred, reporting should be made promptly. Arthur F. Greenbaum, The Attorney's Duty to Report Professional Misconduct: A Roadmap for Reform, 16 GEO. J. LEGAL ETHICS 259, 298 (Winter 2003). The need for prompt reporting flows from the need to safeguard the public and the profession against future wrongdoing by the offending lawyer. Id. This purpose is not served unless Rule 8.3(a) is read to require timely reporting under the circumstances presented.

Appropriate Authority
Louisiana Rule 8.3(a) requires that the report be made to "a tribunal or other authority empowered to investigate or act upon such violation." The term "tribunal or other authority" is not specifically defined. However, as the comments to Model Rule 8.3(a) explain, the report generally should be made to the bar disciplinary authority. Therefore, a report of misconduct by a lawyer admitted to practice in Louisiana must be made to the Office of Disciplinary Counsel.

DETERMINATION OF RESPONDENT'S MISCONDUCT AND APPROPRIATE DISCIPLINE
Applying the principles set forth above to the conduct of respondent in the instant case, we find the ODC proved by clear and convincing evidence that respondent violated Rule 8.3(a). First, we find that respondent should have known that a reportable event occurred at the time of his 1994 barroom conversation with Mr. *1248 Deegan. Stated another way, respondent's conversation with Mr. Deegan at that time gave him sufficient information that a reasonable lawyer under the circumstances would have formed a firm opinion that the conduct in question more likely than not occurred. Regardless of the actual words Mr. Deegan said that night, and whether they were or were not "equivocal," respondent understood from the conversation that Mr. Deegan had done something wrong. Respondent admitted as much in his affidavit, during the hearing on the motion for new trial in the criminal case, during his sworn statement to the ODC, and during his testimony at the formal hearing. Indeed, during the sworn statement respondent conceded that he would have reported the matter "immediately" were it not for the personal problems he was then experiencing. Respondent also testified that he was surprised and shocked by his friend's revelation, and that he told him to remedy the situation. There would have been no reason for respondent to react in the manner he did had he not formed a firm opinion that the conduct in question more likely than not occurred. The circumstances under which the conversation took place lend further support to this finding. On the same day that he learned he was dying of cancer, Mr. Deegan felt compelled to tell his best friend about something he had done in a trial that took place nine years earlier. It simply defies logic that respondent would now argue that he could not be sure that Mr. Deegan actually withheld Brady evidence because his statements were vague and non-specific.
We also find that respondent failed to promptly report Mr. Deegan's misconduct to the disciplinary authorities. As respondent himself acknowledged, he should have reported Mr. Deegan's statements sooner than he did. There was no reason for respondent to have waited five years to tell the ODC about what his friend had done.
In his answer to the formal charges, respondent asserts that he did comply with the reporting requirement of Rule 8.3(a) because he promptly reported Mr. Deegan's misconduct to the District Attorney and the Criminal District Court through the attorneys for the criminal defendant, John Thompson. Respondent has misinterpreted Rule 8.3(a) in this regard. The word "tribunal" must be read in the context of the entire sentence in which it appears. The proper inquiry, therefore, is what authority is "empowered" to act upon a charge of attorney misconduct. In Louisiana, only this court possesses the authority to define and regulate the practice of law, including the discipline of attorneys. La. Const. art. V, § 5(B); In re Bar Exam Class Action, 99-2880 (La.2/18/00), 752 So.2d 159, 160. In turn, we have delegated to disciplinary counsel the authority to investigate and prosecute claims of attorney misconduct. Supreme Court Rule XIX, § 4. Furthermore, while a trial court bears an independent responsibility to report attorney misconduct to the ODC, see Canon 3B(3) of the Code of Judicial Conduct, only this court may discipline an attorney found guilty of unethical behavior. Therefore, respondent is incorrect in arguing that he discharged his reporting duty under Rule 8.3(a) by reporting Mr. Deegan's misconduct to Mr. Thompson's attorneys, the District Attorney, and/or the Criminal District Court. It is undisputed that respondent did not report to the appropriate entity, the ODC, until 1999. That report came too late to be construed as "prompt."[6]
*1249 Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent's actions violated the general duty imposed upon attorneys to maintain and preserve the integrity of the bar. In re: Brigandi, 02-2873 (La.4/9/03), 843 So.2d 1083 (citing Louisiana State Bar Ass'n v. Weysham, 307 So.2d 336 (La.1975)). While we adhere to our observation in Brigandi that an attorney's failure to comply with the reporting requirement is a "serious offense," in the instant case, we find that respondent's conduct was merely negligent. Accordingly, Standard 7.3 of the ABA's Standards for Imposing Lawyer Sanctions provides that the appropriate baseline sanction is a reprimand.[7]
The only aggravating factor present in this case is respondent's substantial experience in the practice of law. As for mitigating factors, we adopt those recognized by the disciplinary board, placing particular emphasis on the absence of any dishonest or selfish motive on respondent's part. Notwithstanding these factors, however, respondent's failure to report Mr. Deegan's bad acts necessitates that some sanction be imposed. Respondent's knowledge of Mr. Deegan's conduct was sufficient to impose on him an obligation to promptly report Mr. Deegan to the ODC. Having failed in that obligation, respondent is himself subject to punishment. Under all of the circumstances presented, we conclude that a public reprimand is the appropriate sanction.
Accordingly, we will reprimand respondent for his actions.

Conclusion
Reporting another lawyer's misconduct to disciplinary authorities is an important duty of every lawyer. Lawyers are in the best position to observe professional misconduct and to assist the profession in sanctioning it. While a Louisiana lawyer is subject to discipline for not reporting misconduct, it is our hope that lawyers will comply with their reporting obligation primarily because they are ethical people who want to serve their clients and the public well. Moreover, the lawyer's duty to report professional misconduct is the foundation for the claim that we can be trusted to regulate ourselves as a profession. If we fail in our duty, we forfeit that trust and have no right to enjoy the privilege of self-regulation or the confidence and respect of the public.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Michael G. Riehlmann, Louisiana Bar Roll number 2072, be publicly *1250 reprimanded. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
VICTORY, J., dissents and assigns reasons.
VICTORY, J., dissenting.
I dissent from the majority opinion and would impose a harsher sanction on Respondent.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires the State to disclose to the defendant in a criminal case evidence that is favorable to the accused and is material to guilt or punishment.
[2] See Standard 7.2 of the ABA's Standards for Imposing Lawyer Sanctions, which suggests that a suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.
[3] The cases cited by ODC and the committee include In re: Leitz, 98-3014 (La.1/8/99), 728 So.2d 835 (attorney suspended for sixty days for failing to supervise law partner or law firm's trust account, which permitted partner to convert third-party funds); In re: Toups, 00-0634 (La.11/28/00), 773 So.2d 709 (attorney publicly reprimanded for failing to report another attorney's unethical conduct); and In re Himmel, 125 Ill.2d 531, 127 Ill.Dec. 708, 533 N.E.2d 790 (1988) (attorney suspended for one year for failing to report another attorney's conversion of client's settlement funds). In addition, the board considered In re: Brigandi, 02-2873 (La.4/9/03), 843 So.2d 1083 (attorney suspended for two years, with all but six months deferred, for misconduct including failing to report another attorney's solicitation activities).
[4] DR 1-103(A) provides that "A lawyer possessing unprivileged knowledge of a violation of DR 1-102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." Model Rule 8.3(a) provides that "A lawyer having knowledge that another lawyer has committed a violation of the rules of professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate professional authority."
[5] We made significant changes to Rule 8.3 effective March 1, 2004, long after the formal charges were filed against respondent.
[6] Although our primary focus is on Rule 8.3(a), we also note that respondent's conduct violated Rule 8.4(d).
[7] Standard 7.3 provides that a reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.