**BOARD OF OVERSEERS OF THE BAR**

v.

**Robert P. BROWN.**

Supreme Judicial Court of Maine.

Argued March 1, 1993.

Decided April 20, 1993.

Karen A. Kingsley (orally), Bd. of Overseers of the Bar, Augusta, for plaintiff.

Robert E. Mongue (orally), Kennebunk, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, COLLINS and RUDMAN, JJ.

PER CURIAM.

Defendant Robert P. Brown, an attorney licensed to practice law, appeals from an order of a single justice of the Supreme Judicial Court (*Glassman, J.*) finding him

in violation of Maine Bar Rules 3.1(a)[1] and 3.2(f)(3),[2] and suspending him from the practice of law for six months. Because the Court's conclusion that Brown violated the Bar Rules was based on a finding of misrepresentation that is not supported in the record, we vacate the judgment.

This case arises out of Brown's purchase of a forty-three acre parcel of undeveloped land in South Berwick, and his efforts to secure a deeded right of access to that land from John and Charlotte Chick, owners of the adjoining property. Brown's property had no deeded access, but Brown's predecessors in title had used an unpaved road that runs across the Chick property for access. There had been disagreement between Frank Malcolm Keyes, the person from whom Brown purchased the property, and the Chicks about Keyes' access over the old road. Attempts had been made to obtain from the Chicks a fifty-foot right of way over their land to the Keyes property. The Chicks refused to deed such a right of way, preferring that the width and permitted uses of the old road be limited.

Brown purchased the real estate from Keyes by warranty deed. Inserted in that deed to Brown was a clause quitclaiming any interest that Keyes had in a "fifty foot right of way over the old road extending across land now or formerly of John Chick[.]" After purchasing the property from Keyes, Brown, on October 2, 1989,

wrote a letter to the Chicks asserting his claim to a right of way across the Chicks' property, and threatening a lawsuit against the Chicks to confirm the existence of the right of way if the matter was not otherwise resolved. That letter stated that Brown was "aware that the deed to the right of way ... is unrecorded." Brown brought suit against the Chicks later in October 1989. In his complaint, Brown asserted claims in the old road based on theories of prescriptive easement, easement by necessity, and easement by implication.[3]

Charlotte Chick filed a complaint against Brown with the Board of Overseers of the Bar, accusing Brown of attempting to intimidate the Chicks with his legal action and threatening them with the cost of litigation. Chick also claimed that Brown had proceeded to enlarge the right of way over the Chicks' property without their consent by the quitclaim language in the deed. After a hearing before a panel of the Grievance Commission, *see* M.Bar R. 7(e) (amended March 30, 1992; *see* M.Bar R. 7.1), the Board filed an information against Brown pursuant to M.Bar R. 7.2(b)(1), charging that Brown violated M.Bar R. 3.1(a), 3.2(f)(3), (4),[4] and 3.7(a),[5] and seeking his suspension or disbarment.

After a full hearing, the Court made several findings. The Court found that the deed was prepared by a person who was

1. Maine Bar Rule 3.1(a) states:

 This Code shall be binding upon attorney as provided in Rule 1(a). Violation of these rules shall be deemed to constitute conduct "unworthy of an attorney" for purposes of 4 M.R.S.A. § 851 and Rule [7.1 & 7.2]. Nothing in this Code is intended to limit or supersede any provision of law relating to the duties and obligations of attorneys or the consequences of a violation; and the prohibition of certain conduct in this Code is not to be interpreted and an approval of conduct not specifically mentioned.

2. Maine Bar Rule 3.2(f)(3) provides in pertinent part:

 A lawyer shall not:
 ....
 (3) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; ...

3. The Chicks filed a motion to dismiss that was ultimately withdrawn. Brown's complaint was later voluntarily dismissed without prejudice.

4. M.Bar R. 3.2(f)(4) provides:
 A lawyer shall not:
 ....
 (4) engage in conduct that is prejudicial to the administration of justice.
 The Court did not find Brown in violation of M.Bar R. 3.2(f)(4).

5. Maine Bar Rule 3.7(a) provides:
 **3.7 Conduct During Litigation**
 **(a) Improper Legal Action.** A lawyer shall not file a suit, assert a position, delay a trial, or take other action on behalf of a client when the lawyer knows, or should know, that such action would merely serve to harass or maliciously injure another.
 The Court found no violation of M.Bar R. 3.7(a).

acting as Brown's agent;[6] and that the quitclaim release was inserted in the deed with Brown's knowledge and consent and without the knowledge and consent of Keyes. The violations of M.Bar R. 3.1(a) and 3.2(f)(3) were based on the Court's further finding of "Brown's course of conduct with relation to the Chicks flowing from his *knowing insertion of misinformation* in the deed from Keyes to [Brown] *purporting to convey a 50 foot wide right of way* across the land of the Chicks." (Emphasis added.)

The Court's factual findings will be upheld unless clearly erroneous. *Board of Overseers of the Bar v. Dineen*, 500 A.2d 262, 264 (Me.1985). There must be competent evidence in the record, however, to support a factual finding. *See Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981). Even assuming the evidence supports the finding that Dorothy Keyes acted as Brown's agent, the Court's finding that the quitclaim release inserted in the deed constituted "misinformation" is without factual basis and unsupported in the record.

A quitclaim release is not a representation that there is any ownership being transferred. *Ricker v. United States*, 417 F.Supp. 133, 140 (D.Me.1976); 33 M.R.S.A. § 161 (1988). Such a release, therefore, cannot constitute misinformation because it does not purport to convey anything more than whatever rights the grantor may have in the property. Here, the effect of the quitclaim clause merely released any interest that Keyes may have had in a fifty-foot right of way across the Chicks' property. There was evidence of a right of way across the Chicks' property, and Keyes had rights, although not specifically defined, in that right of way. The insertion of the quitclaim release neither exposed Keyes to liability for breach of warranty nor prejudiced the Chicks in their opposition to Brown's claim. Although the Board of Overseers alleged that Brown desired to purchase a right of way greater than the inter-

est all parties conceded he was likely entitled to by virtue of Keyes' interest, Brown did not assert to the Chicks or before the Board of Overseers an absolute right to a fifty-foot right of way, nor did he premise his claim on the expansive quitclaim language in the deed.

The Court did not find that Brown's suit filed against the Chicks or his correspondence with them was intended to harass the Chicks, conduct that could have violated M.Bar R. 3.7(a). Rather, the Court determined that Brown violated M.Bar R. 3.1(a) and 3.2(f)(3), because of the insertion of *misinformation* in the deed, in the form of a quitclaim release, that *purported to convey a fifty-foot right of way*. Because the evidence does not support those findings, the suspension must be set aside.

The entry is:

Judgment vacated. Remanded to the Supreme Judicial Court for entry of dismissal of the information.

All concurring.

---

**6.** The evidence disclosed that the deed was prepared by Dorothy Keyes, the wife of the grantor, Frank Keyes. The Keyes were in the process of a divorce. Dorothy Keyes had done some real estate abstracting for Brown in the past. There also was evidence that Dorothy had previously drawn up deeds for Frank in prior land transactions, and that the easement language was inserted at the suggestion of Frank's real estate agent.