2011 ME 124

**BOARD OF OVERSEERS
OF THE BAR**

v.

**David E. WARREN, et al.**

Supreme Judicial Court of Maine.

Argued: June 13, 2011.
Decided: Dec. 8, 2011.

J. Scott Davis, Bar Counsel, Board of Overseers of the Bar, Augusta (orally), and Gisele M. Nadeau, Esq., Portland, on the briefs, for appellant Board of Overseers of the Bar.

Peter L. Murray, Esq., Murray, Plumb & Murray, Portland, for appellee David E. Warren.

Melissa A. Hewey, Esq., Drummond Woodsum, Portland, for appellee James T. Kilbreth.

Peter J. Rubin, Esq. (orally), Bernstein Shur, Portland, for appellees and cross-appellants Eric D. Altholz, Mark K. Googins, Roger A. Clement, Jr., and Juliet T. Browne.

William J. Kayatta, Jr., Esq., Catherine R. Connors, Esq., and Benjamin W. Jenkins, Esq., Pierce Atwood, LLP, Portland, for appellee Verrill Dana LLP.

Panel: LEVY, MEAD, GORMAN, and JABAR, JJ.

Majority: LEVY, MEAD, and GORMAN, JJ.

Dissent: JABAR, J.

GORMAN, J.

[¶1] This case arises from an investigation by the Board of Overseers of the Bar (the Board) into the actions of six Verrill Dana LLP attorneys—David E. Warren, James T. Kilbreth III, Eric D. Altholz, Mark K. Googins, Roger A. Clement Jr., and Juliet T. Browne—who were involved in the discovery and reporting of the misconduct of John Duncan, a former partner in the law firm. The Board, acting through Bar Counsel, appeals [1] from a prehearing discovery order entered by a single justice of the Maine Supreme Judicial Court (*Silver, J.*) granting the six attorneys' motion to quash a subpoena, and also appeals from a judgment entered by a single justice (*Alexander, J.*) determining that none of the six attorneys violated the Maine Bar Rules (Tower 2008) in responding to Duncan's misconduct.[2] We affirm in part and vacate in part.

## I. BACKGROUND

### A. Factual Findings

[¶2] John Duncan joined Verrill Dana in 1978 and was a partner practicing in the firm's private clients group, with the principal responsibilities of administering trust and estate accounts and providing related legal services. In late 2006, one of the firm's paralegals discovered a discrepancy

---

1. Altholz, Googins, Clement, and Browne cross-appeal, asserting that the single justice (*Alexander, J.*) erred in denying their motion for judgment as a matter of law on the basis that the Board's pleading documents failed to allege violations of M. Bar R. 3.2(e)(1), 3.13(a) (Tower 2008). We do not find this argument to be persuasive and do not address it further. *See Bd. of Overseers of the Bar v. Rodway*, 461 A.2d 1062, 1064 (Me.1983).

2. The Code of Professional Responsibility in effect in 2007, M. Bar R. 3 (Tower 2008), has since been replaced by the Maine Rules of Professional Conduct, but the applicable standards are the same. *Compare* M. Bar R. 3.2(e)(1) (Tower 2008), *with* M.R. Prof. Conduct 8.3(a).

in the account of one of Duncan's clients. The check register that Duncan prepared for that client account reflected that a payment had been made to Verrill Dana, but the check, as shown on the account's bank statement, had been made payable to Duncan. The paralegal brought the matter to the attention of Duncan's secretary. By comparing the bank statements to the check registers for the client's account, Duncan's secretary identified a total of fourteen such discrepancies dating back to 2003. In June 2007, Duncan's secretary ultimately confided in another attorney at the firm, who promptly notified Warren, the firm's managing partner, of the concerns and delivered the supporting documentation to him.

[¶ 3] Warren immediately obtained copies of the checks made payable to Duncan and the 2006 spreadsheet for the account in question. These documents revealed to Warren that the checks had not been signed over to a firm account. Although Warren was aware that, in some instances, an attorney might have authority to write checks to himself from a client's account, he did not believe that Duncan had any such authority.

[¶ 4] On June 13 or 14, 2007, Warren advised Kilbreth, the chair of the firm's executive committee, that Duncan appeared to be writing checks from a client account to himself rather than to the firm. Two weeks later, Warren confronted Duncan; Duncan explained that the checks represented attorney fees that he had earned for work on the account, but which should have been paid over to the firm in accordance with the partnership agreement. Duncan also stated that that client account was the only one from which he had written checks to himself. Duncan offered to write the firm a check to cover the funds and to resign from the firm. Warren deferred action on Duncan's offer to resign until speaking with Kilbreth and

the executive committee, but did ask Duncan to pay the partnership $77,500 representing the fees that he had failed to turn over to the firm. Duncan repaid the money in full.

[¶ 5] At a July 9, 2007, executive committee meeting, Warren told committee members Altholz, Googins, Clement, and Browne about Duncan's actions and his offer to resign. Ultimately, the committee agreed to decline Duncan's offer to resign. The single justice did not specifically find, but the record is undisputed, that there was no discussion during this meeting about making a report to the Board of Overseers of the Bar. The executive committee also did not discuss bringing Duncan's conduct to the attention of Gene Libby, the firm's in-house general counsel. The committee concluded that Warren should notify Kurt Klebe, the head of the private clients group, to allow him to implement practices to prevent similar events from occurring in the future.

[¶ 6] Throughout the summer of 2007, Warren delayed notifying Klebe of Duncan's actions because he thought attention from Klebe might drive an already fragile Duncan "over the edge." Although the executive committee members repeatedly asked Warren if Klebe had been notified, they acquiesced in his decision to temporarily defer action.

[¶ 7] On October 2, 2007, Warren met with Klebe to inform him of Duncan's misconduct. After the meeting, Klebe began an investigation and quickly discovered another account from which Duncan had written a check to himself, ostensibly for fees, which had not been turned over to the firm. As he reviewed more of Duncan's client accounts during the remainder of October, Klebe uncovered similar problems.

[¶ 8] On October 10, 2007, Verrill Dana received a "preservation" letter advising

them that Duncan's secretary was pursuing an employment lawsuit against the firm and asking that certain evidence be preserved. Only then did Libby, the firm's in-house general counsel, learn that Duncan had been mishandling funds. Libby undertook an investigation and retained outside counsel to assist him. *In re Motion to Quash Bar Counsel Subpoena,* 2009 ME 104, ¶ 3, 982 A.2d 330. In the course of this investigation, Libby gathered emails and other documents, and wrote memos to others and to the file discussing both the evidence he had gathered and his conclusions about the evidence. *Id.*

[¶ 9] On October 27, 2007, after learning that Duncan's misconduct involved additional client accounts, the executive committee voted to terminate Duncan effective December 31, 2007. The following week, the results of an independent audit ordered by the firm revealed that Duncan had also billed clients for work he had not performed and taken money from those clients' accounts to "pay" himself. At that point, the firm immediately terminated Duncan and notified the Board of Overseers of the Bar, the United States Attorney, and the Cumberland County District Attorney of Duncan's thefts and other improprieties.

B.  Discovery Dispute

[¶ 10] Libby resigned from Verrill Dana in November of 2007. *Id.* Following his resignation, Libby informed Bar Counsel that he believed he had unprivileged knowledge of violations of the Maine Bar Rules that had occurred at Verrill Dana. Bar Counsel subpoenaed the information and documents that formed the basis of Libby's belief, and Verrill Dana moved to quash the subpoena, asserting that the information was protected by the lawyer-client privilege and the work product doctrine. *Id.* ¶ 5. Bar Counsel argued that the crime-fraud exception removed any

such privilege. *Id.; see* M.R. Evid. 502(d)(1).

[¶ 11] A single justice of the Maine Supreme Judicial Court (*Silver, J.*) held a hearing on the motion to quash, reviewed the disputed documents *in camera,* and issued an order in April of 2009 denying Verrill Dana's motion. *Id.* The single justice found that the crime-fraud exception to the lawyer-client privilege applied to all of the disputed documents. *Id.*

[¶ 12] On Verrill Dana's appeal, we first determined that the appeal should not be dismissed as interlocutory. *Id.* ¶¶ 6–12. Next, we set forth the test to be used in determining when the crime-fraud exception could pierce a claim of lawyer-client privilege. *Id.* ¶¶ 13–19. Finally, we vacated the single justice's order and remanded the matter because we could not determine whether the single justice had properly applied the crime-fraud exception. *Id.* ¶ 22.

[¶ 13] On remand, the single justice granted Verrill Dana's motion to quash. The single justice found that Libby and the firm had a lawyer-client relationship and that the firm had "met the requirements of M.R. Evid. 502(a)-(c)" for asserting the lawyer-client privilege. The single justice also found that "even if the firm was not honest and forthcoming about the Duncan matter from June to October, any possible misconduct in failing to come forward ended" when the firm involved Libby. Because any misconduct constituted past conduct, rather than ongoing conduct, the court determined that the crime-fraud exception did not apply.

C.  Alleged Bar Rule Violations

[¶ 14] In September 2010, Bar Counsel filed an information alleging that Warren and the five members of the executive committee had violated M. Bar R. 3.1(a), 3.2(e)(1), (f)(2), (3), (4), 3.6(i), 3.13(a), (b)

(Tower 2008) by failing to investigate, discover, and report Duncan's misconduct, and failing to mitigate losses to clients and the firm resulting from Duncan's misconduct. Following a three-day hearing, the single justice (*Alexander, J.*) found that the Board had failed to prove, by a preponderance of the evidence, that the six attorneys committed the violations charged in the information. Regarding the alleged violation of M. Bar R. 3.2(e)(1), the single justice concluded:

> Based on what the respondents knew or believed at the time, on facts now known to be incomplete, the respondents did not believe that the perceived-to-be aberrational misapplication of firm funds from one account required a report to the Board or the prosecutor as an action that, in light of Duncan's thirty-year history, raised "a substantial question as to another lawyer's honesty, trustworthiness, or fitness as a lawyer." The [c]ourt also notes that ultimately, Duncan's actions were reported to the Board and the prosecutor. The only real issue is whether, in light of all the circumstances discussed above, the Board has proved that the four-month delay from discovery to first report was unreasonable. The delay is not proved to be unreasonable on the facts of this case.

[¶ 15] Regarding Rule 3.13(a), the single justice found that the six attorneys made reasonable efforts to assure that lawyers in the firm would adhere to the Code of Professional Responsibility (the Code). The court also found that the Board failed to prove that any of the six attorneys (1) had direct supervision over any lawyer whose conduct was at issue; (2) ordered or ratified the conduct at issue; or (3) knew of the conduct in time to avoid

or mitigate its consequences, but failed to take reasonable, remedial action.

[¶ 16] Bar Counsel appeals from the order granting Verrill Dana's motion to quash and from the judgment concluding that the six attorneys did not violate M. Bar R. 3.2(e)(1) or M. Bar R. 3.13(a).[3]

## II. DISCUSSION

### A. Order on the Motion to Quash

[¶ 17] This is the second time that an order on Verrill Dana's motion to quash Bar Counsel's subpoena has been appealed. The issues raised by the parties in this appeal can be readily resolved by our analysis in *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, 982 A.2d 330.

#### 1. Timeliness of the appeal

[¶ 18] Verrill Dana contends that because the grant of the motion to quash was an appealable final order, Bar Counsel's appeal should be dismissed as untimely. Although Verrill Dana advances several rationales for treating the single justice's (*Silver, J.*) order granting the motion to quash as a final judgment, we find none of them persuasive in light of our precedent.

[¶ 19] The general rule is that discovery orders are deemed interlocutory and therefore are reviewable only on appeal from the final judgment. *In re Motion to Quash*, 2009 ME 104, ¶ 10, 982 A.2d 330; *Estate of Cox v. E. Me. Med. Ctr.*, 2007 ME 15, ¶ 7, 915 A.2d 418; *Hanley v. Evans*, 443 A.2d 65, 66 (Me.1982). We recognized as much in *In re Motion to Quash*, but reviewed the court's interlocutory order denying the motion pursuant to

---

**3.** Bar Counsel abandoned its claim that the six attorneys violated M. Bar R. 3.6(i). Bar Counsel also does not appeal from the single justice's determination that M. Bar R. 3.1(a) and M. Bar R. 3.2(f) were not violated, so we do not address these rules.

the death knell exception to the final judgment rule because the failure to conduct an immediate review would have rendered impossible any review of Verrill Dana's claim. 2009 ME 104, ¶¶ 9–11, 982 A.2d 330. The order from which the appeal was taken in this case was the one that granted Verrill Dana's motion to quash. This order was an interlocutory discovery order, and Bar Counsel acted appropriately by delaying the appeal until the entry of a final judgment.

2. Order granting the motion to quash

**■** [¶ 20] Bar Counsel challenges the single justice's grant of the motion to quash on the grounds that it (1) failed to evaluate whether each document listed on Verrill Dana's privilege log was a confidential communication protected by the lawyer-client privilege, and (2) incorrectly applied the crime-fraud exception. Bar Counsel's first argument raises an issue that is not properly before us on appeal. We reject the second contention on the merits.

[¶ 21] In *In re Motion to Quash*, Verrill Dana appealed from the single justice's determination that the crime-fraud exception defeated the firm's lawyer-client privilege. 2009 ME 104, ¶ 1, 982 A.2d 330. Neither party raised any challenge in that appeal to the single justice's determination that the lawyer-client privilege applied to the disputed documents, and therefore we did not address the issue. Rather, after setting forth the test for determining the applicability of the crime-fraud exception, we remanded the case for the single justice to "consider for each of the firm's clients at issue whether documents concerning transactions with that client meet the test for application of the exception, or whether some or all of them remain privileged." *Id.* ¶ 22.

[¶ 22] On remand, the single justice revisited the existence of the lawyer-client privilege, and again found that the privilege existed between Libby and the firm. Because the existence of the lawyer-client privilege was fully resolved in the single justice's first order, and not challenged by either party during the first appeal, the parties had no right to ask the single justice to revisit that issue. *See Bean v. Cummings*, 2008 ME 18, ¶ 18, 939 A.2d 676 (stating that the scope of a mandate cannot be "enlarged, limited or modified" following the appeal). Accordingly, whether the lawyer-client privilege protected each document listed on Verrill Dana's privilege log is not properly before us on appeal, notwithstanding the single justice's reconsideration of that issue on remand.

**■** [¶ 23] Next, Bar Counsel asserts that the single justice did not properly apply the crime-fraud exception. To evaluate whether the crime-fraud exception can pierce a client's claim of lawyer-client privilege, we adopted the following test: "(1) [whether] the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2) [whether] the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *In re Motion to Quash*, 2009 ME 104, ¶ 18, 982 A.2d 330 (quotation marks omitted). We review a court's determination of whether the crime-fraud exception applies to disputed documents for an abuse of discretion. *See In re Grand Jury Proceedings*, 183 F.3d 71, 78 (1st Cir.1999).

[¶ 24] Contrary to Bar Counsel's contention, the single justice did not commit an abuse of discretion by misunderstanding or misapplying the crime-fraud exception. Consistent with our discussion in *In re Motion to Quash*, the single justice determined that the firm was not planning or engaged in any fraudulent activity at the time it enlisted Libby's help in the matter, and that the firm did not intend to

facilitate or conceal any fraudulent or criminal conduct in the communications with Libby. We therefore affirm the single justice's order granting Verrill Dana's motion to quash.

**B. Judgment on the Alleged Violations of Maine Bar Rule 3**

▮▮▮▮ [¶ 25] Bar Counsel argues that the single justice (*Alexander, J.*) erred in determining that Warren and the executive committee had not violated the Code. Bar Counsel asserts that the six attorneys violated M. Bar R. 3.2(e)(1) by not immediately reporting Duncan's conduct to the Board, and violated M. Bar R. 3.13(a) by failing to have sufficient policies and procedures in place to prevent and respond to such conduct. We interpret the meaning of the rules de novo as a matter of law, *Cayer v. Town of Madawaska*, 2009 ME 122, ¶ 7, 984 A.2d 207, and review for clear error the findings of fact that determine the applicability of the rule, *Bd. of Overseers of the Bar v. Brown*, 623 A.2d 1268, 1270 (Me.1993).

**1. Obligation to Report Duncan to the Board of Overseers of the Bar**

▮▮ [¶ 26] Maine Bar Rule 3.2(e)(1) as it then existed prescribed the mandatory circumstances in which a lawyer is required to report the misconduct of another lawyer:

> A lawyer possessing unprivileged knowledge of a violation of the Maine Bar Rules that raises a substantial question as to another lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall report such knowledge to the appropriate disciplinary or investigative authority.

Actual knowledge is required, but may be inferred from the circumstances when it is apparent that the lawyer must have known of the misconduct. 2 Geoffrey C. Hazard, Jr., W. William Hodes, & Peter R. Jarvis, *The Law of Lawyering* § 64.4 (3d ed.

Supp.2009). When a lawyer has actual knowledge, that lawyer must determine two things in deciding whether she has an obligation to report the misconduct: (1) whether the other lawyer's conduct relates to his honesty, trustworthiness, or fitness to practice law, and (2) whether the conduct is sufficiently serious to raise a "substantial question" about at least one of these three traits. *See* M. Bar R. 3.2(e)(1); Me. Prof. Ethics Comm'n, Op. No. 100, 1 *Maine Manual on Professional Responsibility* 0–349 to 0–351 (Oct. 4, 1989). Whether an attorney has a "substantial question" about a colleague's honesty, trustworthiness, or fitness to practice law is a subjective test that requires a determination of what the attorney's actual belief was at the time. M. Bar R. 3 Reporter's Notes, 1 *Maine Manual on Professional Responsibility* 3–35 (Supp.2007); 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 64.4.

[¶ 27] The parties do not dispute that by July of 2007, these six attorneys had actual knowledge that Duncan had, on fourteen occasions over a period of three years, deposited client funds totaling $77,500 into his personal bank account. The single justice applied the required subjective standard, and found that the six attorneys believed Duncan's conduct was "an aberrant event by an otherwise honest and trustworthy individual that had not spread wider than this single account and would not be repeated." The single justice also found that this understanding of Duncan's behavior by the six attorneys persisted throughout the summer of 2007, and continued until October of 2007, when they realized that Duncan's assertions that he had taken funds from only one client account were untrue. The single justice concluded that the Board failed to prove, by a preponderance of evidence, that the six attorneys violated Rule 3.2(e)(1), based on its determination that the six attorneys "did not believe that the perceived-to-be

aberrational misapplication of firm funds from one account ... [was] an action that, in light of Duncan's thirty-year history, 'rais[ed] a substantial question as to another lawyer's honesty, trustworthiness, or fitness as a lawyer.'" (Quoting M. Bar R. 3.2(e)(1).)

[¶ 28] We are bound to uphold the single justice's finding that the six attorneys did not subjectively question Duncan's honesty, trustworthiness, or fitness to practice law if there is any competent evidence in the record, including any reasonable inferences, to support that finding. *See Brown*, 623 A.2d at 1270.

[¶ 29] For many lawyers, the initial report of Duncan's actions certainly would have raised a substantial question as to his honesty, trustworthiness, or fitness as a lawyer in other respects.[4] Nevertheless, each of the six attorneys testified that it never even occurred to him or her that Duncan's mishandling of funds gave rise to an obligation to report Duncan pursuant to Rule 3.2(e). Each flatly admitted that despite hearing of Duncan's conduct, no one discussed whether they should review the Bar Rules or whether they should consult the firm's counsel.

[¶ 30] This testimony, which the single justice found credible, supports the single justice's finding that the six attorneys did not subjectively believe that Duncan's acts raised a substantial question of his honesty, trustworthiness, or fitness as a lawyer. Given this testimony, the wholly subjective nature of the test to be applied, and the

fact that the six attorneys reported Duncan as soon as they realized their trust was misplaced, we must affirm the single justice's determination that Bar Counsel failed to prove that the six attorneys violated M. Bar Rule 3.2(e).

[¶ 31] Although we affirm based on the subjective nature of the inquiry and the deferential standard of review, we comment on the parties' treatment of the matter. The operative inquiry is whether the six attorneys had knowledge of conduct by Duncan that raised substantial questions of Duncan's "honesty, trustworthiness, or fitness as a lawyer." M. Bar. R. 3.2(e)(1). All parties have attempted to obscure this narrow question with immaterial considerations. Bar Counsel has undertaken lengthy and unrelenting attempts to convince the single justice and this Court that Duncan's actions were "theft." Likewise, the six attorneys attempt to distinguish between misconduct involving "firm" funds in violation of the partnership agreement—which they believed, for a time, was the extent of Duncan's misconduct—and misconduct involving "client" funds—which they did not understand Duncan to have committed until later in 2007.

[¶ 32] These contentions demonstrate a misunderstanding of the proceedings underway. Rule 3.2(e)(1) requires the disclosure of misconduct by a fellow attorney that raises a "substantial question as to [his] honesty, trustworthiness, or fitness as a lawyer" without regard to whether the alleged victim is a client or colleague.

---

4. Rule 3.2(e)(1) does not impose an obligation on, or allow, attorneys to sit in judgment of each other. Thus, an "absolute certainty of ethical misconduct is not required before the reporting requirement is triggered." *In re Riehlmann Att'y Disciplinary Proc.*, 891 So.2d 1239, 1247 (La.2005); *see also* Ronald D. Rotunda, *The Lawyer's Duty to Report Another Lawyer's Unethical Violations in the Wake of Himmel*, 1988 U. Ill. L.Rev. 977, 985 (1988) ("[T]he reporting rule does not require that the quantum of evidence of which the lawyer is aware be beyond dispute ... It does not require 'certainty.'"). An attorney need not investigate the conduct in question, or make any decision that another attorney has in fact violated the Code. *In re Riehlmann*, 891 So.2d at 1247. Rather, section 3.2(e)(1) creates a duty to report an identified problem to an authority with the expertise to investigate the issue and to handle it appropriately. *See id.*

That Duncan engaged in dishonest, fraudulent, deceitful, or misrepresentative conduct pursuant to M. Bar R. 3.2(f)(3) by, at least, diverting firm funds to himself in knowing violation of the partnership agreement could raise a "substantial question as to [his] honesty, trustworthiness, or fitness as a lawyer" pursuant to M. Bar R. 3.2(e)(1) even if no client funds were ever implicated. The plain language of Rule 3.2(e)(1) makes no distinction in the duty to report misconduct based on the identity of the alleged victim. *See* M. Bar R. 2(a) (Tower 2008) (stating that the rules are intended to apply to an attorney's relationship with "clients, the general public, other members of the legal profession, the courts and other agencies of this State"). Furthermore, whether Duncan's partners thought he had committed a theft pursuant to criminal statutes is not, and was never, the issue in these bar proceedings. *See* 7 Am Jur.2d *Attorneys at Law* § 44 (2007) ("To warrant disciplinary action it is not necessary that the misconduct of an attorney is such as will render the attorney liable to criminal prosecution. . . .").

2. Responsibility for Ensuring Compliance with the Maine Bar Rules

[¶ 33] Maine Bar Rule 3.13(a) addressed the responsibilities of partners and lawyers for compliance with the Code.[5] Bar Counsel asserts that the attorneys violated (1) M. Bar R. 3.13(a)(1) because, at the time of Duncan's misconduct, there were no procedures in place to ensure compliance with ethics rules, and (2) M. Bar R. 3.13(a)(3)(ii) because they failed to take remedial measures to avoid or mitigate the consequences of Duncan's behavior.

[¶ 34] Rule 3.13(a)(1) requires law firm partners to make efforts to enact procedures that will deter unethical behavior. These measures may include professional ethics education, the development of policies or procedures to address ethics concerns that arise, and the creation of an "ethical atmosphere." M. Bar R. 3.13 Advisory Committee Note to 1997 amend., 1 *Maine Manual on Professional Responsibility* 3–105 (Supp.2007). Other policies and procedures that a firm should have in place are those designed to avoid conflicts of interest, ensure deadlines are met, account for client funds, and provide supervision and support to inexperienced lawyers. Restatement (Third) of Law Governing Lawyers § 11 cmt. g (2000); *accord* M.R. Prof. Conduct 5.1(a) & cmt. (2) (providing the current iteration of M. Bar R. 3.13(a)(1)). Appropriate supervision may vary depending upon the size and nature

---

5. Maine Bar Rule 3.13(a) provided:
   (a) **Responsibilities of a Partner or Supervisory Lawyer.**
   (1) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Code of Professional Responsibility.
   (2) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure the other lawyer conforms to the Code of Professional Responsibility.
   (3) A lawyer shall be responsible for another lawyer's violation of the Code of Professional Responsibility if:

   (i) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
   (ii) the lawyer is a partner in the law firm, in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

   Bar Counsel does not challenge that portion of the single justice's judgment finding no violation of M. Bar R. 3.13(a)(2) or M. Bar R. 3.13(a)(3)(i), and we do not address them further.

of the law firm, but cannot be expected to guarantee against all violations of the Code. *See* 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 42.4 (3d ed. Supp.2010). Compliance with this rule, unlike with Rule 3.2(e)(1), is determined based on an objective standard of reasonableness. M. Bar R. 3.13(a)(1).

[¶ 35] We recognize that these six attorneys, comprising Verrill Dana's executive committee, were caught completely "off guard" by Duncan's conduct. We also recognize that they dealt with Duncan with compassion, and there is no suggestion of bad faith in their failure to refer his conduct to Bar Counsel or to individuals in the firm who were more capable of assessing the need for action, such as the firm's own counsel. However, we cannot ignore that, when faced with the significant malfeasance of a self-destructing partner, none of the attorneys even recognized that the Maine Code of Professional Responsibility required them to contemplate reporting that partner's conduct and subsequent breakdown. Notwithstanding the single justice's factual findings, when a firm's practices and policies do not require the firm's leadership to at least consider whether it has an ethical obligation to report a colleague in the circumstances presented by this case, we are compelled to find, as a matter of law, that the firm failed to have in effect "measures giving reasonable assurance that all lawyers in the firm conform to the Code of Professional Responsibility."

[¶ 36] In addition, although we generally agree with the single justice's legal conclusion that "[a]mong experienced lawyers in a firm, informal supervision and periodic review" are sufficient to meet the ethical requirements of Rule 3.13(a)(1), *see Attorney Grievance Comm'n of Md. v. Kimmel*, 955 A.2d 269, 285–86 (Md.2008), that is not the case with respect to any lawyer who has recently been found to have acted in a substantially "aberrant" fashion, and whom his partners believe to be suicidal and at risk of being pushed "over the edge" if the partner responsible for the lawyer's day-to-day supervision is so informed. The obligations under Rule 3.13(a)(1) vary not only depending on whether an attorney is experienced or inexperienced, but also on whether the attorney is understood to be suffering from a serious emotional impairment. As the single justice found, Warren permitted Duncan to continue to practice law for more than three months without putting any additional measures into effect to ensure Duncan's ethical performance. This response, which was acceded to by the full executive committee, did not, as a matter of law, satisfy Rule 3.13(a)(1)'s requirement of "reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Code of Professional Responsibility." *Id.*

[¶ 37] Accordingly, we conclude that the six attorneys, as the partners in the firm who were acting as the firm's executive committee, and the only lawyers within the firm who knew of Duncan's actions, violated M. Bar R. 3.13(a)(1).

■ [¶ 38] Finally, pursuant to subsection Rule 3.13(a)(3)(ii), partners and supervising attorneys have a duty to prevent or rectify the harm actually caused by a violation of the Bar Rules if any of those attorneys learns of the harm at a point when there is still an opportunity to take corrective action. M. Bar R. 3.13(a)(3)(ii); *see* 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 42.6 (3d ed. Supp. 2010). The single justice found, and the record supports, that after the attorneys discovered Duncan's misconduct in June of 2007, there were no consequences from the delay in reporting that could have been

avoided or mitigated. We do not disturb that portion of the single justice's decision.

The entry is:

Order granting the motion to quash the subpoena is affirmed. Judgment finding no violation of the Maine Bar Rules is vacated and remanded for entry of a judgment consistent with this opinion and an appropriate sanction.

JABAR, J., concurring in part and dissenting in part.

[¶ 39] I concur with the Court's decision affirming the single justice's decision granting the motion to quash, but I dissent from the Court's decision vacating that portion of the single justice's judgment determining that there was no violation of the Maine Bar Rules. While I agree with the Court's conclusion that there is sufficient evidence to support the single justice's conclusion that Bar Counsel failed to prove that the six attorneys violated Maine Bar Rule 3.2(e), I respectfully dissent from the Court's determination as a matter of law that the six attorneys violated Maine Bar Rule 3.13(a)(1).

[¶ 40] The single justice's factual findings must be upheld unless they are clearly erroneous. *Bd. of Overseers of the Bar v. Brown*, 623 A.2d 1268, 1270 (Me.1993). If there is competent evidence in the record to support the single justice's factual findings, then we should not be substituting our judgment for the judgment of the fact-finder. *Id.*

[¶ 41] Maine Bar Rule 3.13(a)(1) (Tower 2007) provides, "A partner in a law firm shall make reasonable efforts to assure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Code of Professional Responsibility." There is substantial evidence in the record supporting the single justice's conclusion that Bar Counsel failed to prove that the six attorneys, as members of the firm's Executive Committee, did not have measures in place to reasonably assure that the firm's attorneys would conform to the Code in conducting their professional affairs.

[¶ 42] In order to refute the alleged M. Bar R. 3.13(a) violations filed against them, the six attorneys presented the expert testimony of Brian Dench, a Maine attorney, who had extensive experience both administering and interpreting the Maine Bar Rules. Dench served on the Grievance Commission from 1979, when it was first constituted, through 1990. Dench also served as a member of the Professional Ethics Commission, which was established by this Court to consider requests for ethics advisory opinions, from 1981 to 1988. He served on the Advisory Committee on the Code of Professional Responsibility, and as part of his responsibility in that capacity, worked to review amendments to the Maine Bar Rules. In addition to being the "go to" authority for ethical questions within his own firm, Dench over the years authored Continuing Legal Education materials for various seminars concerning legal ethics.

[¶ 43] Dench offered his opinion not only on the issue of whether the six attorneys had violated M. Bar R. 3.2(e), but also on the issue of the firm's (and the six attorneys') compliance with M. Bar R. 3.13(a)(1). Dench testified that his own firm had practices and policies in place that complied with M. Bar R. 3.13(a)(1), and upon reviewing the practice and policies in place at Verrill Dana, he found them to be no different than what was in place at his firm and in other law firms around the state.

[¶ 44] The single justice also heard a great deal of testimony regarding the practices and policies in place at the firm. Bar Counsel neither presented any experts to controvert Dench's opinion, nor presented any other evidence establishing that the six attorneys failed to have in place poli-

cies and measures to reasonably assure that all attorneys employed by the firm complied with the Code according to the letter of M. Bar R. 3.13(a)(1). Instead, Bar Counsel relied upon inconsistencies within the testimony of the witnesses presented to establish that the named defendants did not have proper policies and procedures in place. Since the determination of whether the six attorneys, as members of the firm's Executive Committee, had in place measures giving reasonable assurance of compliance with the Code is a factual issue, it is up to the fact-finder, the single justice, to reconcile the inconsistent and conflicting testimony in arriving at its findings and conclusions. *See Maine Shipyard & Marine Ry. v. Lilley,* 2000 ME 9, ¶ 18, 743 A.2d 1264. Furthermore, because Bar Counsel did not file a motion for additional findings of fact pursuant to M.R. Civ. P. 52, "we infer any findings necessary to support the result that the court reached, as long as those findings are supported by the record." *Desmond v. Desmond,* 2011 ME 57, ¶ 5, 17 A.3d 1234. I do not believe that we can find as a matter of law that the measures the firm had in place at the time, and the same measures the six attorneys employed in evaluating the misconduct that occurred here, violated M. Bar R. 3.13(a)(1).

[¶ 45] Because there was sufficient, competent evidence supporting the single justice's conclusion that Bar Counsel had failed to prove a violation of M. Bar R. 3.13(a)(1), I would affirm the judgment that the six attorneys did not violate any of the conduct provisions specified in Maine Bar Rule 3.