MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 118
Docket:      Pen-17-381
Argued:      April 11, 2018
Decided:     August 14, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Dissent:     ALEXANDER, J.

DOROTHEA B. McCAIN

v.

JOHN F. VANADIA et al.

MEAD, J.

[¶1]   John F. Vanadia, D.O., Bangor Surgical Associates, P.A., and St. Joseph Hospital appeal from an order of the Superior Court (Penobscot County, *A. Murray, J.*), acting as medical malpractice screening panel chair pursuant to 24 M.R.S. § 2852(6) (2017) and M.R. Civ. P. 80M(e), granting Dorothea B. McCain's motion to compel them to produce in discovery thirty redacted, nonparty patient medical records that the court found were relevant to McCain's notice of claim asserting medical negligence.  The appellants contend that the court erred in ordering the records' disclosure because they are (1) irrelevant to McCain's claim and (2) protected from disclosure by state

and federal statute and by the physician-patient privilege set out in M.R. Evid. 503.

[¶2]  McCain has moved to dismiss this interlocutory appeal on two grounds, asserting first that decisions of the Superior Court acting as panel chair are not appealable, *see Gafner v. Down E. Cmty. Hosp.*, 1999 ME 130, ¶ 12 735 A.2d 969; and second that dismissal is required pursuant to the final judgment rule, *see Bd. of Overseers of the Bar v. Warren*, 2011 ME 124, ¶ 19, 34 A.3d 1103 ("The general rule is that discovery orders are deemed interlocutory and therefore are reviewable only on appeal from the final judgment.").

[¶3]  Given the unusual procedural posture presented here, we hold that the discovery order issued during the course of the panel proceedings is now a nullity and therefore does not govern future proceedings in this case. Accordingly, no exception to the final judgment rule applies that would require us to reach the merits of the parties' arguments now, and we remand the matter to the Superior Court.

## I.  BACKGROUND

[¶4]  In November 2015, John Vanadia, the sole physician employed by Bangor Surgical Associates, P.A., performed a laparoscopic cholecystectomy

(gallbladder removal) on Dorothea McCain at St. Joseph Hospital in Bangor. During the procedure, Vanadia cut McCain's common bile duct after mistaking it for her cystic duct, necessitating corrective surgery soon thereafter.

[¶5] On June 30, 2016, McCain filed a notice of claim against Vanadia and Bangor Surgical Associates, P.A. (collectively Vanadia), alleging medical negligence; her claim was later amended to include St. Joseph Hospital (SJH). *See* 24 M.R.S. § 2853(1) (2017); M.R. Civ. P. 80M(b)(1). The Chief Justice of the Superior Court appointed a medical malpractice screening panel chair pursuant to 24 M.R.S. § 2852(2)(A) (2017) and M.R. Civ. P. 80M(b)(2).

[¶6] In May 2017, McCain filed a motion to compel the production in discovery of "[t]he operative notes for each and every [laparoscopic cholecystectomy] performed by Vanadia in 2015 with the names and any identifying information for the individual patients redacted to preserve patient confidentiality." When Vanadia and SJH objected, the panel chair referred the motion to the Superior Court. *See* 24 M.R.S. § 2852(6); M.R. Civ. P. 80M(e).

[¶7] Pursuant to M.R. Civ. P. 26(g), the court held a hearing and granted the motion, ordering that Vanadia and SJH produce the operative notes for the fifteen laparoscopic cholecystectomies performed by Vanadia preceding McCain's procedure and for the fifteen following her procedure. The court took

4

great care to order that the records be heavily redacted to protect the identities of the patients.

[¶8] Vanadia and SJH filed a motion to reconsider and a timely notice of appeal; McCain then moved this Court to dismiss the appeal. The trial court declined to act on the motion to reconsider because of the pending appeal, *see* M.R. App. P. 3(b) (Tower 2016),[1] and we consolidated our consideration of the motion to dismiss with our review of the appeal's merits.

[¶9] Inexplicably, while those matters were pending, the parties opted to forge ahead with the panel process without the records subject to the discovery order having been produced. The screening panel held a hearing and entered a unanimous decision on the questions of whether Vanadia deviated from the applicable standard of care; whether his acts or omissions were the proximate cause of McCain's injury; and whether, if Vanadia were found to be negligent, any contributory negligence on the part of McCain outweighed his negligence.[2] *See* 24 M.R.S. § 2855(1) (2017). The issuance of findings by the screening panel marked the conclusion of the panel's role in McCain's claim. *See* 24 M.R.S. § 2858 (2017). On September 18, 2017, McCain filed a civil

---

[1] The motion to reconsider and the notice of appeal were filed before the restyled Maine Rules of Appellate Procedure took effect. M.R. App. P. 1.

[2] At this stage of the case, the panel's findings are confidential. 24 M.R.S. § 2857(1) (2017).

complaint in the Superior Court against Bangor Surgical Associates, P.A., and SJH, alleging medical negligence.

## II.  DISCUSSION

[¶10]  The appeal brought by Vanadia and SJH is interlocutory, in that McCain's post-screening panel medical negligence claim has not yet proceeded beyond the filing of a complaint.   Therefore, we must initially determine whether the appellants have met their burden of "demonstrating . . . that one of the exceptions to the final judgment rule justifies our reaching the merits of the appeal."  *Taylor v. Walker*, 2017 ME 218, ¶ 8, 173 A.3d 539 (alteration omitted) (quotation marks omitted).   If not, then the appeal "is not ripe for appellate review."  *Id.*   Vanadia and SJH assert that the death knell and collateral order exceptions to the final judgment rule apply here.   Because we conclude that the order at issue is no longer operative, the exceptions do not apply.

[¶11]  In issuing its discovery order granting McCain's motion to compel the production of thirty nonparty operative notes, the Superior Court acted in a limited role in place of the screening panel chair as part of the screening panel proceedings.  *Gafner*, 1999 ME 130, ¶ 12, 735 A.2d 969; *see* 24 M.R.S. § 2852(6); M.R. Civ. P. 80M(e).  In *Gafner*, we held that in that circumstance

> [the court's] actions are subject to the same provisions and remedial limitations as those of the chair.  The decisions of the

panel chair, including its discovery rulings, are not subject to appellate review. Consequently, ordinary discovery orders entered by the Superior Court in matters pending before the panel are not reviewable.

1999 ME 130, ¶ 12, 735 A.2d 969 (citations omitted). However, in a footnote, we recognized, but did not address, "the possibility that a judicial order in a panel discovery matter related to issues such as privilege may be immediately subject to appellate review." *Id.* ¶ 12 n.4.

[¶12] Eight years later we revisited *Gafner*, holding that

discovery orders that are entered by the Superior Court while the matter is pending before a prelitigation panel are not reviewable. In *Gafner*, we reserved the issue as to whether the decision of a judicial officer in a panel discovery matter relating to an issue such as privilege might be immediately subject to appellate review. We here answer that reserved question in part. A decision upholding a claim of privilege or confidentiality is not subject to appellate review.

*Estate of Cox v. E. Me. Med. Ctr.*, 2007 ME 15, ¶ 6, 915 A.2d 418 (citation omitted). We specifically did not answer the question that is presented in this case, namely whether a decision on a discovery matter denying a claim of privilege or confidentiality is subject to immediate appellate review. For the following reasons, on the unique and very specific facts and circumstances of this case, we decline to answer it now.

[¶13]  As noted previously, after McCain obtained the unusual discovery order, the parties elected to proceed with the panel hearing before Vanadia and SJH produced the records that the court had ordered to be disclosed.  Indeed, to date, we understand that no records have been disclosed.  Had the parties and the panel taken the step of scheduling the screening panel hearing for *after* the receipt of the court's discovery order and our consideration of that order, we may well have been called upon to decide the question left unanswered in *Estate of Cox*.  Now, however, the case has moved from the panel phase to the trial phase without any nonparty medical records having been produced, and we conclude that the order has lost its vitality.  In other words, in these unique circumstances, and on this record, we conclude that the order is no longer the "law of the case" and has become a nullity without legal force or effect.  *See Chretien v. Chretien*, 2017 ME 192, ¶ 6, 170 A.3d 260 ("We will decline to hear a case that has lost its controversial vitality and is moot . . . ." (alteration omitted) (quotation marks omitted)).

[¶14]  We acknowledge that, ordinarily, the Superior Court's discovery order would be effective in the post-panel proceeding.  As 24 M.R.S. § 2857(3) (2017) provides, "in a subsequent Superior Court action all discovery conducted during the prelitigation screening panel proceedings is deemed

discovery conducted as a part of that court action." In this case, however, because the parties allowed the panel hearing to move forward and to a conclusion without disclosure of the nonparty records, the records were apparently deemed not sufficiently relevant to the plaintiff's case in the panel process. Moreover, the motion for reconsideration was never acted upon by the judge or panel chair, and the assessment of the relevance of the records may have changed as the litigation progressed. These unique circumstances lend additional weight to our conclusion that the discovery order was rendered a nullity upon the conclusion of the panel process. Accordingly, we determine that any discovery request for the nonparty records at issue here, if still sought by the plaintiff, must be presented anew to the Superior Court for an analysis of the records' relevance and whether any privilege protects them.

[¶15] Because the records were not provided and therefore not presented in the panel proceeding, we need not decide, and do not decide, whether a decision of a judge *acting as panel chair* that compels discovery in the face of a claim of privilege is immediately appealable.

[¶16] Finally, because the order appealed from has become a nullity, neither the death knell nor the collateral order exception to the final judgment rule applies with regard to the merits of the appeal. Both exceptions require

that the party invoking the exception demonstrate an irreparable loss of the right claimed. *See Taylor*, 2017 ME 218, ¶ 8, 173 A.3d 539; *In re Evelyn A.*, 2017 ME 182, ¶ 14, 169 A.3d 914 (stating that the death knell exception "allows a party to appeal an interlocutory order immediately if substantial rights of that party will be irreparably lost if review is delayed until final judgment" (quotation marks omitted)); *Bond v. Bond*, 2011 ME 105, ¶ 11, 30 A.3d 816 (stating that the collateral order exception applies when a court's decision "would result in irreparable loss of the rights claimed, absent immediate review" (quotation marks omitted)). Vanadia and SJH cannot make the required showing concerning their claim that the nonparty operative notes must be protected from disclosure because no records were actually produced, nor will they be without further hearing and analysis by the Superior Court. Accordingly, there is no harm or threat of harm to an important right that would justify our immediate review of the merits. *See Taylor*, 2017 ME 218, ¶ 8, 173 A.3d 539.

[¶17] We note that the dissent undertakes to address substantive issues raised by the appellants. *See* Dissenting Opinion ¶¶ 21-33. Because we are remanding this matter without reaching the merits of the appeal, we do not endorse or reject the conclusions reached by the dissent on those issues.

10

The entry is:

> Remanded for further proceedings in the Superior Court consistent with this opinion.

ALEXANDER, J., dissenting.

[¶18]  I respectfully dissent.

[¶19]  Medical malpractice actions are commenced by a filing of a notice of claim in the Superior Court.  24 M.R.S. § 2853(1) (2017).  Those actions have a medical malpractice screening panel phase, 24 M.R.S. §§ 2854-2858 (2017), but they remain actions pending before the Superior Court.  Because the parties addressed the question thoroughly with the Superior Court, and the Superior Court entered a detailed order on the discovery issue, I would not determine the order to have lost its vitality, notwithstanding the serious question of relevance given that the panel proceeded without the evidence at issue.  I would reach the merits and vacate the order.

[¶20]  That discovery order authorizes Dorothea McCain and her attorneys to launch a discovery fishing expedition, reviewing the medical records of at least thirty other innocent, unrelated individuals who have undergone similar procedures performed by the defendants.  Knowledge that we have not addressed the merits of this order may invite others to launch

similar fishing expeditions, hoping to bolster a client's case by prying into the private medical records of perhaps hundreds of innocent, unaware individuals.

[¶21]  The Superior Court's order authorizes review of records of unnamed and unnotified patients in violation of those patients' constitutional rights to privacy, in violation of privileges established in our Rules of Evidence, and in violation of numerous state and federal statutes mandating the privacy of patient identities and the confidentiality of medical records.  *See infra* ¶ 30.

[¶22]  Vanadia, his medical practice, and the hospital where the procedure was performed all have standing to assert the constitutional rights to privacy, the privileges against disclosure of communications relating to medical treatment, and the statutory rights of privacy and confidentiality on behalf of the unidentified and otherwise defenseless patients whose records are sought in this matter.  *See* Field & Murray, *Maine Evidence* § 503.3 at 227 (6th ed. 2007).

[¶23]  Turning to the merits of the appeal, we have not yet addressed the question presented here: whether an individual claiming improper treatment by a medical provider may obtain access to records of other patients who have received similar treatment from that medical provider to determine if those other patients' records might contain information to support the plaintiff's

action. The implications of the Superior Court's ruling for patients and the medical community that serves those patients are vast.

[¶24] Even though the Superior Court's order has become ineffective as a result of the Court's determination that it is a nullity, the ruling remains unchanged. Therefore, that precedent, preliminary as it is, may serve as an invitation for others to seek the records of other patients to see what might be in those records to help the complainants' cases. Sometimes the invasion of rights of privacy and confidentiality of only a few patients may be involved, other times, with more common procedures, hundreds of records of other patients may be sought.

[¶25] Once the door is opened, access to other patients' records may be obtained by complainants unhappy with all manner of treatments including, as a few examples, abortions, HIV infection therapies, or substance abuse treatments.

[¶26] The plaintiff argues that the identities of the other patients would be protected by redacting the patient information to which they may have access. How those records would be redacted, by whom, and who would pay the costs for recovery, review, and redaction of perhaps thousands of pages of electronic patient records is unclear. The inquiring party likely would have to

see the records to ensure that she gets the information that a court has ordered that she shall have.

[¶27] As the treatment at issue necessarily would be identified in any records reviewed and provided, the likelihood of actual confidentiality of identification of patients, at least in smaller Maine communities where only a few treatments may be provided per year, would be uncertain.

[¶28] The example presented by this case is particularly troubling. The plaintiff is seeking access to the medical records of fifteen as yet unidentified patients who received similar treatment before the plaintiff's treatment and the medical records of fifteen as yet unidentified patients who received similar treatment after the plaintiff's treatment. Review of the limited information in the file suggests that potentially identifying information related to each patient's physical characteristics and health conditions may be important in determining if other patients' records are relevant to the claim of negligence for identifying and cutting the wrong duct.

[¶29] The records that the trial court has ordered to be disclosed regarding patients who received treatments after the plaintiff's treatment might only be relevant on a narrow credibility question. That question would be whether, after the plaintiff's treatment, the medical provider engaged in

14

subsequent remedial measures, *see* M.R. Evid. 407,[3] to create the medical records—not the treatments but the medical records—to reflect differently how events during the procedure were reported.

[¶30] There are several statutes and rules that the trial court's mandate to disclose other patients' records may violate:

- Title 42 U.S.C.S. § 1320d-6 (LEXIS through Pub. L. No. 115-185) of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and implementing regulations published at 45 C.F.R. pts. 160 and 164 (2017), paint with a very broad brush, mandating privacy of patient-specific medical information and confidentiality of medical records. The statute and implementing regulations are voluminous and complicated. No exception to the mandated privacy and confidentiality is apparent that would authorize an individual dissatisfied with medical treatment to discover the redacted or unredacted medical records of others who have received similar treatments to determine if those records might include some information to support a negligence claim.

- The Maine statute entitled "[c]onfidentiality of health care information," 22 M.R.S. § 1711-C (2017), provides similar protection for patient privacy and the confidentiality of medical records. "An individual's health care information is confidential and may not be disclosed other than to the individual by the health care practitioner or facility except as provided in subsection 3, 3-A, 3-B, 6 or 11." *Id.* § 1711-C(2). None of the listed subsections authorize the court mandated access to individuals' medical records at issue here.

- Other state statutes limiting access to medical records regarding physical health conditions by persons other than the person being treated and their treatment providers include 5 M.R.S. §§ 200-E, 4572(2) and 4573(2)

---

[3] Pursuant to M.R. Evid. 407, evidence of subsequent remedial measures is inadmissible to prove negligence and culpability. Neither the trial court nor the plaintiff have addressed in any detail how the ordered discovery of other patients' records created after the plaintiff's treatment would lead to the development of admissible evidence.

(2017). These statutes may apply to protect the medical records of one or more of the individuals whose medical records the plaintiff seeks in this case. Many other statutes limiting disclosure of records relating to mental health conditions may also apply to some medical records the plaintiff seeks. *See, e.g.*, 1 M.R.S. § 402 (2017); 34-A M.R.S. § 1216 (2017); 34-B M.R.S. § 1207 (2017).

• Maine Rule of Evidence 503 gives individual patients a privilege to refuse to disclose confidential communications made for the purpose of diagnosing or treating medical conditions. Such communications are indicated in McCain's medical record, which she asserts are similar to the records of other patients that she wants to access.

[¶31] The briefs of the parties cite to many opinions from other jurisdictions that reach differing results on whether plaintiffs in medical negligence actions may discover the medical records of other patients who have had similar procedures or have been treated by the same medical professional or facility. Some of those opinions indicate that if the medical records sought are "redacted"—whatever that means—then the requested discovery of other patients' medical records will be allowed. *See, e.g.*, *Staley v. Jolles*, 230 P.3d 1007, 1013 (Utah 2010). Few of those opinions indicate how, or by whom, or at what cost, record search, review, and redaction will be accomplished. And few of those opinions seem to consider how easily a person may be identified by descriptive information in a record, even if the specific identifying information has been removed.

[¶32]   The contrary opinions of other jurisdictions refusing to allow discovery of other patients' records to see if they might contain evidence that might support a particular plaintiff's claim have the better argument. *See, e.g.*, *Roe v. Planned Parenthood Sw. Ohio Region*, 912 N.E.2d 61, 71 (Ohio 2009) ("Redaction of personal information . . . does not divest the privileged status of confidential records.  Redaction is merely a tool that a court may use to safeguard the personal, identifying information within confidential records that have become subject to disclosure either by waiver or by an exception.").

[¶33]  Open-ended fishing expedition discovery, invading other patients' privacy and authorizing review of confidential medical records to see if those records contain information that might support an individual plaintiff's medical negligence claim, violates M.R. Evid. 503 and violates federal and state statutes mandating patient privacy and the confidentiality of patients' medical records. We should reach the merits of this appeal applying exceptions to the final judgment rule.  Reaching the merits, for the reasons discussed above, we should vacate the Superior Court's discovery order so that it cannot be enforced in pretrial discovery to mandate disclosure of other patients' confidential medical records potentially leading to use of those records in a public trial.

James F. Martemucci, Esq., and Robert P. Hayes, Esq. (orally), Germani Martemucci & Hill, Portland, for appellant John F. Vanadia

Mark G. Lavoie, Esq., and Jennifer A.W. Rush, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellant St. Joseph Hospital

Benjamin R. Gideon, Esq., and Taylor A. Asen, Esq. (orally), Berman & Simmons, P.A., Lewiston, for appellee Dorothea B. McCain

Karen Frink Wolf, Esq., and Rachel M. Wertheimer, Esq., Verrill Dana LLP, Portland for amici curiae Maine Hospital Association and Maine Medical Association

Penobscot County Superior Court docket number CV-2016-117
FOR CLERK REFERENCE ONLY