ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Walter C. Dumas, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
In April 1995, Vanessa Bolinger retained respondent to represent her in connection with a personal injury matter stemming from a vehicular accident. Approximately one year later, respondent settled the personal injury claim for $7,250. Respondent apparently indicated to Ms. Bolinger that she would receive sufficient proceeds from the settlement to allow her to purchase a used vehicle to replace her vehicle, which had been totaled in the accident.
On April 2, 1996, Ms. Bolinger went to respondent’s office where she endorsed the *315 settlement check. At that time, respondent learned his client’s share of the settlement would not be enough to allow her to purchase the car. As a result, respondent agreed to reduce his legal fee from $2,400 to $992.50.
Respondent provided Ms. Bolinger with $500 in cash claiming it was an “advance” on the settlement since it would allegedly take approximately ten days for the check to clear the bank. Moreover, respondent advised Ms. Bolinger that he would withhold the funds owed to the third party medical providers and pay them directly.
12Because Ms. Bolinger was anxious to purchase the vehicle, respondent wrote a letter to the automobile dealership advising that she would be receiving her funds in about ten days (April 12, 1996) “or shortly thereafter.”[1] . Ms. Bolinger gave the dealership the $500 respondent advanced to her and wrote a check to the dealership for the balance, $8000. The dealership agreed to hold this check for a period of at least ten days.
The following day, respondent cashed the settlement check. However, respondent did not place these funds in his client trust account, as that account had been seized ten days earlier by the United States Internal Revenue Service (“IRS”) for non-payment of back taxes due on his law practice.[2] According to respondent, his tax attorney advised respondent not to deposit any client funds in his trust account, because those funds could be subject to seizure by the IRS.
Five days after cashing the check, respondent gave his client a cash payment of $100,' representing another “advance” on her settlement so that she could pay insurance on the vehicle she intended to purchase. At that time, respondent failed to advise his client that he had already cashed the settlement check and was personally holding the funds until the check cleared his bank.[3]
Respondent failed to provide Ms. Bol-inger with her funds within ten days of the settlement, as he had promised. As a result, when the dealership deposited her check, it was returned for insufficient funds. As a consequence, the bank imposed NSF charges on Ms. Bolinger’s account, resulting in several of Ms. Bol-inger’s previously ^issued checks being dishonored and creating an overdraft in her account. While. her bank assumed some charges, she was still required to go to individual merchants and pay NSF charges that were imposed on the dishonored checks.
Ms. Bolinger made numerous attempts to contact respondent by telephone, but to no avail. On April 22, 1996, Ms. Bolinger went to respondent’s office. At respondent’s direction, his secretary prepared a settlement disbursement sheet, which indicated Ms. Bolinger was due $3,100 after the appropriate deductions were taken.[4] *316 The secretary provided Ms. Bolinger this amount in cash.
In an effort to protect her interests, Ms. Bolinger contacted her medical providers and learned a total of $1,577.50 in outstanding medical expenses were still owed. Three days after Ms. Bolinger picked up her file from respondent’s office, he had issued three checks, dated May 11, 1996, drawn on his operating account and directed to the three medical providers. However, none of the checks were forwarded in payment for the services rendered since respondent inadvertently failed to send them out after waiting for his accounts to become operational with the consent of the IRS and his tax attorney.
DISCIPLINARY PROCEEDINGS

The Complaint

Ms. Bolinger filed a complaint with the ODC advising of respondent’s misconduct. In the month following his receipt of the complaint, respondent issued checks to two of the medical providers in the amounts of $445 and $458, respectively.
In the course of the ODC’s investigation, respondent gave a sworn statement asserting that, prior to responding to the disciplinary complaint, he had believed the 1 ¿three checks issued to the health care providers on May 11, 1996 had been sent out. Although one of the medical providers had not been paid, respondent nevertheless testified that he had since forwarded payment to all three health care providers and was able to provide such proof. Finally, ten months after the complaint had been filed, respondent paid the last medical provider.
Subsequently, Ms. Bolinger instituted a malpractice suit against respondent. In December 1998, respondent paid his former client $10,000 to settle his civil liability in connection with the matter.

Formal Charges

The ODC instituted one count of formal charges alleging respondent violated Rules 1.15(a) (failure to keep funds of a client or third party separate from attorney’s own funds), 1.15(b) (failure to refund and account for client funds) and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.[5]
Respondent filed an answer admitting there was delay in paying some of the medical providers; however, he urged that the delay was understandable because of the confusion surrounding the seizure of his client trust account. He denied that there was ever any intent to conceal his actions from his client, or that any commingling or conversion of funds took place. In mitigation, respondent noted that he had substantially reduced his legal fee, and only sought to protect his Ghent’s interest. Finally, he pointed out that his actions did not involve a selfish or venal motive, or result in personal gain to him.

\ ¡Formal Hearing

The matter was presented for formal hearing before a hearing committee. Ms. Bolinger testified respondent knew her receipt of the settlement funds was critical because she was a single mother without transportation and needed to purchase a vehicle. She testified as to the injury to her finances based on respondent’s failure to timely disburse the funds.
*317 Respondent’s tax attorney, Timothy Burgmeier, testified respondent’s financial records were “sloppy, in a little bit of disarray” and there was no segregation of each client’s funds from those of respondent. He alleged respondent’s operating account had virtually no funds in it at the time the trust account was seized. Mr. Burgmeier testified he advised his client not to deposit any funds in the seized account, and was unaware of respondent’s handling of the Bolinger matter.
Respondent testified that he failed to place the settlement funds in his trust account based on the general legal advice given by Mr. Burgmeier, but conceded Mr. Burgmeier had no specific knowledge of the Bolinger matter, or that respondent cashed the check and withheld the funds. Respondent disputed his client’s testimony that he would not speak to her following the period her check to the automobile dealership was returned for insufficient funds. Specifically, he testified that he had numerous conversations with his client advising her to come to his office to get her portion of the funds, but she refused because she was unsatisfied with the amount she was to receive.

Hearing Committee Recommendation

The hearing committee found the ODC proved' by clear and convincing evidence the allegations subject of the formal charges. It determined that respondent converted and commingled client funds in violation of Rule 1.15 (failure to safe keep | ^client and third party property) and failed to advise his client of the IRS lien on his account and the status of payments to the medical providers in violation of Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation).
Relying on Louisiana State Bar Ass’n v. Pasquier, 545 So.2d 1014 (La.1989), the committee found no merit in respondent’s defense that he faded to deposit the funds because he feared the money would be seized by the IRS.[6] In support, it noted that his retention of funds for his client did not excuse him from complying with the professional rules regarding the manage-ihent of funds. Moreover, it pointed out that respondent could have had separately issued checks from the bank, rather than cashing the check and retaining the funds. The committee found that the record conclusively established respondent did not properly account to his client for the disposition of the settlement funds or his failure to timely pay the third party medical providers. As aggravating factors, the committee recognized respondent’s failure to account for the funds, improper use of his operating account to disburse client funds, prior disciplinary record,[7] dishonest or selfish motive, lack of remorse, pattern of misconduct and multiple offenses. It found respondent did not present credible evidence in mitigation. Accordingly, the committee recommended respondent be suspended for a period of three years, subject to a one year period of supervised probation.

Disciplinary Board Recommendation

l7The disciplinary board accepted the committee’s findings that clear and con *318 vincing evidence exists to support violations of Rules 1.15(a) (failure to keep funds of a client or third party separate from attorney’s own funds), 1.15(b) (failure to refund and account for client funds) and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation).
In addressing the issue of sanctions, the board concluded respondent knowingly violated duties owed to his client by failing to hold Ms. Bolinger’s funds separate from his own and by not making the funds available to her in a timely fashion. The board found that respondent knew or should have known that he failed to make the funds available within ten days as promised and that he failed to timely pay the third party medical providers.
At the same time, the board recognized respondent’s arguments asserted in mitigation. Specifically, it pointed out that $600 in settlement funds were delivered to Ms. Bollinger in cash, and the remainder of the funds was paid in nineteen days. Also, respondent took a reduction in his legal fee, and the medical providers were ultimately paid. Moreover, it pointed out the settlement funds were not deposited in respondent’s trust account upon a tax attorney’s advice to avoid IRS seizure of the funds. The board maintained that, while it did not excuse or justify respondent’s conduct, it did militate against the severity of the sanctions to be imposed.
As aggravating factors, the board recognized respondent’s prior disciplinary conduct, dishonest or selfish motive, vulnerability of the victim, substantial experience in the practice of law[8] and imposition of other penalties or sanctions.
1 sRelying on Standard 4.12 of the ABA’s Standards for Imposing Lawyer Sanctions,[9] the board determined the baseline sanction was suspension. Applying jurisprudence from this court,[10] the board deviated downward from the committee’s proposed three-year suspension and instead recommended respondent be suspended for one year and one day, with six months and one day deferred, followed by a one year supervised probation. Two board members dissented finding the proposed sanction to be unduly lenient.
Both the ODC and respondent filed an objection to the board’s findings and rec *319 ommendation. As such, the matter was set on the court’s docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). |gWhile we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to. the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our review, we' conclude the record supports the committee’s factual findings. The heart of respondent’s disciplinary violation was his commingling of client and third party funds in violation of Rule 1.15. While respondent’s decision to cash the settlement check and retain the funds may have been motivated by a desire to protect these funds from seizure by the IRS, there were alternatives available to him that would have protected the interests of all parties and would have allowed a timely disbursement of the funds to Ms. Bolinger and her healthcare providers.
Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct created a strong potential of harm, because it exposed his client and the third party health care providers to the danger of losing their funds. His actions caused emotional and financial harm to his client. The baseline sanction for this misconduct is a suspension.
ImAs aggravating factors, we recognize respondent’s prior disciplinary record, substantial experience in the practice of law and the vulnerability of the victim. In mitigation, we find respondent sincerely believed he was acting in the best interest of his client. Additionally, the commingling of funds only lasted for a short length of the time. While restitution was not fully paid prior to the disciplinary complaint being filed, it was effectuated shortly thereafter.
Considering these factors, we conclude a one-year suspension, with six months deferred, subject to a one year period of supervised probation, is the appropriate penalty.
DECREE
Upon review of the findings and recommendation of the hearing committee and *320 disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Walter C. Dumas be suspended from the practice of law in Louisiana for a period of one year. Six months of the suspension shall be deferred, and respondent shall be placed on probation for a period of one year, subject to the provision that any misconduct during this time will be grounds for making the deferred portion of the suspension executory or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.
VICTORY, J., dissents and would not defer any of the suspension.

. According to Ms. Bolinger, the "shortly thereafter” was to indicate the funds were to clear after ten business days.

. There was $1,468.08 in respondent’s client trust account at the time of the levy, which lasted approximately twenty-one days, and respondent was unable to state how much of the seized funds were his own and how much were his clients.

. Apparently, respondent was concerned about the solvency of the insurance company which issued the settlement check. Ultimately, the check cleared.

. Specifically, the disbursement sheet indicated $4,150 in deductions ($992.50 in attorney's fees + $600 in cash advances + $2557.50 in medical expenses) from the $7,250 settlement award.

. The formal charges only cite a violation of Rule 1.15. However, the written allegations of misconduct describe conduct, with more specificity, in violation of sections (a) (failure to keep funds of a client or third party separate from attorney's own funds) and (b) (failure to refund and account for client funds) of that provision.

. In Pasquier, we held "[although respondent's motive in retaining funds for the protection of the purchasers was proper, this does not excuse him from complying with rules on managing these funds.”

. Respondent has a prior disciplinary record consisting of two reprimands: File No. 7528-A (9/15/96) (incompetence, neglect and engaging in a conflict of interest) and File No. 7860-A (2/17/87) (withholding a fee in excess of that specified in an employment contract, failure to pay third party medical providers and failure to place disputed funds in trust).

. Respondent was admitted to the practice of law in Louisiana in 1972 and, thus, had been practicing for 22 years at the time of the misconduct.

. Standard 4.12 provides "[sjuspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.”

. Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986) (two year suspension imposed on an attorney with substantial experience in the practice of law and an extensive prior disciplinary record for gross negligence in treatment of client funds resulting in personal benefit to the attorney); In re: Reed, 99-3435 (La. 1/14/00), 753 So.2d 175 (six month suspension, deferred, was imposed pursuant to consent proceedings on an attorney without a prior disciplinary record, but with significant legal experience, who improperly handled his client trust account, resulting in the conversion of $2,000 in client funds); In re: Moore, 00-2616 (La.10/13/00), 769 So.2d 1180 (six month suspension, fully deferred, subject to a two year period of supervised probation, imposed on attorney pursuant to consent proceedings for inadvertently failing to timely remit funds owed to a third party medical provider) and In re: Jones, 98-0971 (La.11/6/98), 721 So.2d 850 (one year suspension with all but two months deferred imposed on an attorney, with no prior disciplinary record, who withheld $2,500 from a client’s settlement to pay "future” medical expenses, but subsequently failed to pay one medical bill in the amount of $270 and account for the balance, as well as permitted his client trust account on numerous occasions to fall below the amount held in escrow).