# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #006

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Per Curiam handed down on the **4th day of February, 2016**, is as follows:

**PER CURIAM**:

2015-B -1570      IN RE: WALTER C. DUMAS

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Walter C. Dumas, Louisiana Bar Roll number 5163, be and he hereby is suspended from the practice of law for two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, Section 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

HUGHES, J., dissents and would impose a lesser sanction.

SUPREME COURT OF LOUISIANA

NO. 2015-B-1570

IN RE:  WALTER C. DUMAS

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Walter C. Dumas, an attorney licensed to practice law in Louisiana.

**PRIOR DISCIPLINARY HISTORY**

Before we address the current charges, we find it helpful to review respondent's prior disciplinary history.  Respondent was admitted to the practice of law in Louisiana in 1972.  In 1987, respondent was reprimanded for withholding a fee in excess of that specified in an employment contract, failing to pay third-party medical providers, and failing to place disputed funds in trust.  In 1996, respondent was reprimanded for engaging in conduct involving incompetence, neglect, and a conflict of interest.  In 2002, respondent was suspended from the practice of law for one year, with six months deferred, followed by a one-year period of supervised probation, for commingling client and third-party funds.  *In re: Dumas*, 02-0149 (La. 6/7/02), 819 So. 2d 313 ("*Dumas I*").

Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.

## UNDERLYING FACTS

### *The Durr Matter*

In 2009, Tamara Durr retained Dumas & Associates LLC to represent her in the succession of her father, Eddie Cordell Durr. The matter was handled by an associate of the firm. Respondent, who was the sole manager of the trust account for the office, received $18,509.78 in client funds belonging to the estate. Respondent deposited the funds into a trust account at American Gateway Bank. Following the completion of the succession, respondent agreed to disburse the funds to the two heirs, Haver Durr (the decedent's surviving spouse) and Tamara Durr, with Mrs. Haver Durr to receive $11,105.87 and Tamara Durr to receive $7,403.91. In January 2011, respondent issued a check to Mrs. Haver Durr in the agreed-upon amount, but the check was drawn from an account at Regions Bank. Respondent did not pay Tamara Durr until May 2012, following the filing of a disciplinary complaint.

In connection with the management of his law office, respondent failed to keep and maintain complete records of trust account funds. Respondent also failed to maintain a single client trust account, instead choosing to maintain five separate client trust accounts, none of which was denominated or associated with a specific legal matter. Prior to the disbursement of funds to Mrs. Haver Durr, the balance of the American Gateway account fell below the minimum necessary to satisfy respondent's obligations to his clients, resulting in the conversion of client funds.

The ODC alleged that respondent's conduct violated Rules 1.15(a) (safekeeping property of clients and third persons) and 1.15(g) (a lawyer shall create and maintain an interest bearing client trust account) of the Rules of Professional Conduct.

*The Trust Account Matter*

On May 16, 2011, the ODC received a return check notice on two checks totaling $1,126.13 that were drawn on respondent's trust account at Regions Bank. The following day, respondent deposited personal funds in the account in an amount sufficient to cover the overdraft. A review of respondent's trust account records revealed the following:

Respondent routinely deposited and maintained large undifferentiated sums of personal and client funds in the account for extended periods of time.

On May 11, 2011, respondent made a cash deposit to the account without identifying the source of the funds.

Respondent withdrew large sums from the account by checks made payable to himself or by presenting "counter checks" made payable to cash, none of which describe or identify the reason or purpose of the payment.

Respondent frequently and routinely paid office expenses and other law office operating charges from the account.

Respondent failed to perform routine and regular inspections and/or reconciliations of the account to ensure the integrity of client funds.

The ODC alleged that respondent's conduct violated Rule 1.15(f) (cash withdrawals and checks made payable to "cash" are prohibited on client trust accounts; a lawyer shall subject all client trust accounts to a reconciliation process) of the Rules of Professional Conduct.

## DISCIPLINARY PROCEEDINGS

In September 2014, the ODC filed formal charges against respondent. Respondent answered the formal charges and admitted his negligent misconduct. He also requested a hearing in mitigation, which was conducted by the hearing committee in February 2015.

3

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings consistent with the underlying facts described above. The committee also made the following findings:

Respondent argued that when the Durr succession concluded, his associate ordered two checks, which respondent executed in blank with the understanding that the purpose was disburse monies to both heirs. Respondent testified that he first learned that Tamara Durr had not received her money in June 2011, when she contacted him. Respondent then discovered that his associate had issued one check made payable to Mrs. Haver Durr and the second check made payable to Mrs. Durr's attorneys. Respondent argued that while there was no doubt he owed money to Tamara Durr, by the time the matter came to his attention, he discovered that he had miscalculated his accounts and had insufficient funds in the trust account to pay Tamara, and he could not use other client monies to pay her. Respondent testified that he "would pay no matter how long it would take" and began gathering funds to pay her. After explaining this to Tamara Durr, and before he could rectify the situation, she filed a disciplinary complaint against him in October 2011. Respondent then hesitated to contact her until he sought counsel. Ultimately, respondent paid Tamara Durr through his attorney in May 2012. Respondent took full responsibility and blamed no one but himself for the situation; he presented as genuinely remorseful and sympathetic to the client. Respondent stated that he regretted the situation and admitted that he should have recognized the problem. Respondent also admitted that he has "sloppy bookkeeping" and was glad Tamara Durr was able to get her money.

Ms. Teri Fontenot, hired by the ODC as a forensic accountant, reviewed respondent's sworn statements, documents for the Durr succession, and respondent's trust accounts at American Gateway for the period June 2009 through

August 2010 and at Regions Bank for the period July 2010 through June 2011.[1] Ms. Fontenot found that respondent used a debit memo, as opposed to a trust account check, 162 times on the American Gateway account and 36 times on the Regions account.[2] Ms. Fontenot testified that in June 2011, respondent paid himself $14,550 from the trust account. Ms. Fontenot acknowledged that there was no way to know on any given day whether money in the account belonged to respondent or to his clients, and she had no confidence in respondent's ability to make that determination either.

Respondent did not dispute Ms. Fontenot's findings and conclusions. He admitted that poor accounting practices led to his negligent misconduct, noting that he did not keep or maintain complete records of his account funds or completely and accurately reconcile or balance his trust accounts on a regular or periodic basis. To determine balances, respondent called his bank and wrote down balances, and relied on that information to issue checks. He described instances whereby he could not identify certain clients with certain banking transactions. Respondent argued that he believed that he had a system in place whereby he was always able to determine what money was on deposit in his trust account and whether the money belonged to him or to his clients. Respondent explained that he kept notes in files regarding client payouts and kept disbursement sheets, although he admitted that he no longer had the notes or the sheets for the relevant time periods. Respondent testified that he searched his storage facility, which is located at his office, but was not successful in finding the records, despite the rules which require him to keep and preserve his records for five years after a case is closed.

---

[1] Respondent informed the hearing committee in his pre-hearing memorandum that he has closed all but one of his trust accounts.

[2] Ms. Fontenot explained that a debit memo is "moving money from one account to another … via phone call or going to the bank, fill out a slip."

Respondent admitted that while he frequently and routinely withdrew large sums from the trust account, the funds were attorney's fees due to him. Respondent occasionally pulled from those fees to pay office expenses and operating charges, both by issuing checks in blank for members of his staff to complete and by writing counter checks payable to himself. Respondent testified that he also issued checks drawn on his trust account which were made payable to his secretary. Respondent and his secretary also used the debit memo process to transfer funds from his trust account to his operating account. There were occasions when after a case settled, his secretary would cash a check and disburse the cash to clients who did not have checking accounts. She also wrote and signed checks, which were made payable to herself, in order to pay utility bills. Respondent testified that he discontinued this practice when he became aware that non-lawyers were prohibited from signing trust account checks. Although the debit memo does not record to whom certain cashier's checks were made payable, respondent testified that these checks were usually made out to the client and issued for out-of-town clients. Respondent admitted that he could not determine to which client certain activities were related by looking at his banking records.

Based on these factual findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.

The committee determined that respondent violated duties owed to his clients, the public, and the legal system. His misconduct was rooted in negligence. His lapses demonstrate a deviation from the standard of care that a reasonable lawyer would exercise, particularly since respondent was previously disciplined for the same type of misconduct. Although he believed his system of recordkeeping was sufficient, respondent was negligent in failing to properly identify or appropriately safeguard the property of his clients from his own. Even if his records of account funds were in his storage area, respondent is negligent by not

6

preserving those records in an accessible format for inspection by him or by anyone else for the requisite period of five years after the termination of representation.

However, no fraudulent acts were committed in connection with the misconduct. And the harm to Tamara Durr, while actual, was not lasting. Respondent has made a good faith effort to rectify the consequences of his misconduct by gathering funds and seeking counsel to assist him in making full restitution, which he did, albeit after Tamara filed a complaint with the ODC. Respondent was credible when he testified that upon discovering Tamara had not received the disbursement, he had no doubt he owed her. Respondent was also in good faith when he explained that he fully intended to pay her but felt the need to consult with an attorney due to the complaint she filed against him.

Respondent understands the gravity of the matter and has admitted to the negligent management of his trust account. Respondent was cooperative in describing and admitting his poor accounting practices. Respondent took full responsibility for his trust account and for the activities associated therein. Respondent recognizes his need for accounting assistance and has set up a process to manage that administrative function. He does not recall attending Ethics School, professional law office management, or professional remediation as a result of previous discipline; however, in acknowledging that changes to his processes are critical, respondent entered the Louisiana State Bar Association's ("LSBA") Trust Accounting School in 2011. Respondent has also hired an accounting service to administer and manage his trust account.

The committee noted that under the guidelines set forth in *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986), the baseline sanction for negligent conversion of client funds is suspension.

7

In aggravation, the committee found a prior disciplinary record, multiple offenses, and substantial experience in the practice of law (admitted 1972). In mitigation, the committee found the absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character and reputation, and remorse.

Considering all of these factors, the committee recommended respondent be suspended from the practice of law for one year, with six months deferred, followed by a two-year period of supervised probation.

The ODC objected to the hearing committee's report and recommendation. The ODC specifically objected to the committee's factual finding that respondent's conduct was merely negligent.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. The board also found respondent violated the Rules of Professional Conduct as alleged in the formal charges.

The board determined that respondent negligently violated duties owed to his clients. His negligence is considerable since he has again mismanaged his trust account and client funds, to the detriment of a client, and has failed to amend his accounting practices following his prior discipline matter. In fact, in his answer to the charges, respondent blamed his misconduct on poor accounting practices. There is no evidence to overturn the committee's finding of negligence, but his negligence was of a high or gross degree, as he should have known he was dealing improperly with client property given his prior discipline. His misconduct caused actual harm to Tamara Durr. She did not receive her funds until fifteen months after the succession was concluded, and only after she filed a complaint with the

8

ODC. His misconduct had the potential to cause harm to an unknown number of clients as respondent had no way of knowing with accuracy what client funds were in his trust account at any given time. The guidelines set forth in *Hinrichs* suggest that a baseline sanction of at least one year is appropriate.

In aggravation, the board found a prior disciplinary record, multiple offenses, and substantial experience in the practice of law. In mitigation, the board found the absence of a dishonest or selfish motive, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character and reputation, remorse, and remoteness of prior offenses.

After considering the prior jurisprudence of this court, the board recommended respondent be suspended from the practice of law for one year, with six months deferred, followed by a two-year period of supervised probation, during which he should be required to attend the LSBA's Ethics School and Trust Accounting School and undergo quarterly trust account audits performed by a CPA approved by the ODC.

One board member dissented in part, and would recommend a one year and one day suspension, with no period of deferral.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and

9

recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

In this matter, the record supports a finding that respondent grossly mishandled his trust account, resulting in the commingling and conversion of client funds. Such conduct constitutes a violation of Rules 1.15(a), 1.15(f), and 1.15(g) of the Rules of Professional Conduct, as alleged in the formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

As in other conversion cases, *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986), is instructive in determining the baseline sanction. In *Hinrichs*, we established the following guidelines:

> In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
>
> A three year suspension from practice typically results in cases involving similar but less aggravated factors. In

10

such cases the lawyer is guilty of at least a high degree of negligence in causing his client's funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.

A suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.

A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made.

Applying the guidelines of *Hinrichs*, it is clear the baseline sanction in this case is a lengthy suspension. Respondent is guilty of at least a high degree of negligence in mismanaging his client trust accounts. His actions caused actual harm to a client, and potential harm to an unknown number of clients. The harm respondent caused to his client was not rectified until after she filed a disciplinary complaint against him. Significant aggravating factors are present, including respondent's prior disciplinary record for similar misconduct, the fact that he committed multiple offenses, and his substantial experience in the practice of law.

Considering these factors, we find the appropriate sanction for respondent's misconduct is a two-year suspension from the practice of law. [3]

---

[3] The board suggested we impose a sanction similar to the one we imposed in *Dumas I* – namely, a one-year suspension with six months deferred, followed by probation with conditions. When we imposed a relatively lenient sanction in *Dumas I*, it was our intention that respondent be given an opportunity to address his deficiencies. However, the record reveals that since his prior suspension, respondent's accounting practices have only deteriorated further. The continuation of respondent's misconduct following our judgment in *Dumas I* makes it clear no useful purpose would be served by deferring any portion of respondent's suspension.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Walter C. Dumas, Louisiana Bar Roll number 5163, be and he hereby is suspended from the practice of law for two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

**SUPREME COURT OF LOUISIANA**

**NO. 2015-B-1570**

**IN RE: WALTER C. DUMAS**

**ATTORNEY DISCIPLINARY PROCEEDING**

**Hughes, J., dissents and would impose a lesser sanction.**